# Wythebille

JOSEPH SCHOOLFIELD POTTS, JR., ET ALS. V. J. K. RADER, ADMINISTRATOR, ETC.

June 8, 1942.

Record No. 2545.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Gordon & Gordon* and *Thomas H. Stone*, for the appellants.

*Louis S. Herrink, Littleton M. Wickham* and *J. Roy Saunders*, for the appellees.

HUDGINS, J., delivered the opinion of the court.

This appeal involves the question of the construction of the will of Fannie Lavinia Sheppard, probated on May 18, 1880. The pertinent parts of the will read: "I bequeath to my three nieces, viz: Ann Eliza Sheppard, Belle G. Sheppard and Kate E. Sheppard, and to my nephew Adam Empie Sheppard, and to my cousin Charles R. Darracott all the landed estate I have in the county of Henrico, consisting of two plantations, 'Half Sink' and 'Ethelwood,' * * * (subject however to the provisions hereafter made in this will) each of them, my three nieces and nephew, and cousin aforesaid, to have an equal interest in the same. And in case of the death of either of my three nieces or nephew aforesaid, I wish the portion that such decedent or decedents would be entitled to if living, to go to the heirs of the body of such decedent or decedents, should they have any such heirs, otherwise to the survivors and their heirs; but to my cousin Charles R. Darracott aforesaid, I leave his portion in fee simple upon the condition that he shall pay a debt of about ($2500) Twenty Five Hundred Dollars, which he procured from me as a loan, since the war; but should he prefer not to assume the payment of this debt, (upon these terms) then at his death his portion shall be subject to the same conditions as the other portions, viz: be divided among my three nieces and nephew aforesaid or their heirs."

Three of the named beneficiaries died without issue. Two died leaving children. The dates of the deaths of the parties and the issue surviving are:

Charles R. Darracott died in 1885 without issue. Before

his death he declined to pay the $2500 debt. Hence, his portion of the two plantations passed to the three nieces and nephew, all of whom survived him.

Kate E. Sheppard married A. B. Guigon and died in 1898, leaving one son, A. B. Guigon, Jr.

Ann Eliza Sheppard married one Lurty and died in 1909 without issue.

Belle G. Sheppard married one Potts and died in 1930, leaving three sons, Joseph Schoolfield Potts, Jr., Adam Empie Potts and James Sheppard Potts.

Adam Empie Sheppard died in 1934 testate, unmarried and without issue.

The principal parties to this controversy are Joseph School-field Potts, Jr., Adam Empie Potts and James Sheppard Potts, the sons of Belle G. Potts (nee Sheppard), and the administrator c. t. a. of A. B. Guigon, Jr., who died October 4, 1936.

The question involved is whether Fannie Lavinia Sheppard died intestate as to the 1/5 portion of her estate devised for life to Adam Empie Sheppard, who outlived his three sisters and cousin. The trial court entered a decree declaring that the testatrix died intestate as to the property devised to Adam Empie Sheppard for life. From that decree the three sons of Belle Sheppard Potts obtained this appeal.

This estate has been in litigation since 1881. Numerous decrees have been entered construing the will, dividing the property and distributing the income. Some of the decrees construing the will seem to be conflicting. Under these circumstances, we approach the solution of the question involved, first, by attempting to determine the intent of the testatrix from the will itself independently of the decrees entered in the cause; and, second, by ascertaining the extent to which we are bound by the earlier decrees from which no appeals have been taken.

The briefs of each of the parties contain numerous citations of authorities quoting the cardinal rules to be applied in the construction of wills. The intent of the testatrix is the polar star for the guidance of the court. This intent must be collected from the language of the will ex-

amined as a whole, giving force and effect to every clause. It is not to be presumed that the testatrix used an unnecessary word or one to which no force can be given. Harrison on Wills, sec. 185; *Shepard's Heirs* v. *Shepard's Estate*, 60 Vt. 109, 14 A. 536.

It is apparent from the language used in this will that the testatrix's primary intent was to give the two plantations to the named beneficiaries for life and to create a remainder in the children of the respective nieces and nephew. These remainders were contingent upon each of the beneficiaries dying with issue surviving. In the event that this condition was not fulfilled, the gift over of the remainders was "to the survivors and their heirs."

The words "and their heirs" used in this clause indicate words of inheritance or limitation. However, the testatrix uses the word "heir" three other times. The context shows that she used the word "heirs" twice to denote children or issue of the nieces and nephew. The fourth and last use of the word "heirs" is in that part of the will creating a remainder of the 1/5 portion of the estate devised to the cousin, Darracott, for life. This provision of the will reads: "* * * then at his death his portion shall be subject to the same *conditions* as the other portions, viz: be divided among my three nieces and nephew aforesaid or their heirs." The testatrix in effect states that the meaning of the words "survivors *and* their heirs" is the same as "my nieces and nephew aforesaid *or* their heirs."

In *Chapman* v. *Chapman*, 90 Va. 409, 18 S. E. 913, the testator gave his property to his wife for life and provided that, at her death, the property "should be sold by my executors, and the money arising from the same should be equally divided between my four children, above named, or their lawful heirs begotten of their bodies." One of the children died before the life tenant. The question presented was whether the remainder became vested at the death of the testator or at the death of the life tenant. This court, speaking through Judge Lewis, said: "In the present case the fact that the gift is to the children 'or their lawful heirs be-

gotten of their bodies' does not make the gift contingent. The money arising from the sale of the property, after the death of the life tenant, was at all events to be equally divided into four parts, and paid to the testator's four children 'or their lawful heirs,' &c., which means that it was to be paid to the children living at the death of the life tenant, or to the representatives of such as might then be dead, the words 'or their lawful heirs,' &c., being words of limitation, and not the substitution of a new class of beneficiaries taking as purchasers from the testator. For to effectuate the intention of the testator we must read 'and' for 'or,' and give to the word 'heirs' its usual and legal signification."

In *Crews* v. *Hatcher*, 91 Va. 378, 21 S. E. 811, the testator devised certain property to his wife for life, and created a remainder in the following language: "At the death of my said wife, Maria Updegraff, I direct that the remaining portion of my estate shall be equally divided among the said Edward M. Hatcher, Henry C. Hatcher and Sarah E. Clark, or their heirs respectively, upon which final division the said Edward M. Hatcher and Sarah E. Clark shall account to the said Henry C. Hatcher for one-third part of the real estate herein devised to them respectively, the value thereof to be estimated as of the date of which they may come in possession of the same."

The residue of his estate was devised as follows: "I give and bequeath the residue of my real estate fronting on Craghead street, in the town of Danville, Va., to Edward M. Hatcher and Sarah E. Clark, widow of Michael Clark, deceased, to them and their heirs forever, to be equally divided between them, with reference to the value of each share, that of the said Sarah E. Clark to be laid off next to the lot upon which I at present reside" (being the same property devised to his wife for life).

Edward M. Hatcher died before the life tenant. The question presented was what interest did he take in the property devised to the wife of the testator. It was conceded that the use of the word "heirs" in the residuary clause was in its usual and legal significance as a word of inheri-

tance. It was contended that the use of the word "heirs" in the phrase "or their heirs respectively" gave to Edward M. Hatcher a remainder contingent upon his surviving the life tenant. This court held that the will spoke as of the death of the testator, and "that after a bequest of an estate for the life of the first taker, words of survivorship in a will are always to be referred to the period of the testator's death, where no special intent appears to the contrary."

The language used in the present will shows that the testatrix intended the word "survivors" to refer to the death of the first-takers and not to the death of the testatrix. The first class of remainders created by the will was contingent upon the death of the life tenants with issue surviving. If this condition was not fulfilled, there was a gift over. Adam Empie Sheppard was the last survivor of the named beneficiaries. If the gift over does not include.issue of the nieces or "heirs" as used, the testatrix died intestate because there was no survivor within the strict legal meaning of the word.

If the disjunctive "or" is substituted for the conjunctive "and" following the word "survivors," the dominant scheme of the disposition of the testatrix's property will be consummated. Such an interpretation will not reduce or cut down one portion by a later limitation. It simply explains what, on its face, appears to be a contradiction in the use of words and carries out the dominant intention gathered from the four corners of the will. It avoids the possibility of intestacy and distributes the entire estate to the issue surviving the life tenants. This construction seems to be in accord with the views of the trial court, as appears from the decree of April 11, 1881, wherein it was said: "* * * the court doth decide that under the will of Miss Fannie Lavinia Sheppard—Adam Empie, Anne E., Bell G. and Kate E. Sheppard are entitled to and take a life estate in the real estate, devised to them by the will of their Aunt, Miss Fannie Lavinia Sheppard in Henrico county, known as 'Half Sink' and 'Ethelwood,' and that in case of the death of either or any of the said devisees without issue then his or her part

of the said real estate shall go to the survivors or survivor of the said devisees *or their heirs*."

However, by decree of August 1, 1910, it was expressly held that A. B. Guigon, Jr., the only surviving child of Kate E. Guigon (nee Sheppard), did not take under the will any portion of the estate devised to Ann Eliza Lurty for life. The decree expressly declared that on Ann Eliza Lurty's death without issue, Belle G. Potts (nee Sheppard) and Adam Empie Sheppard, as survivors, were the only parties interested, and that each was entitled to one-half of this 1/5 portion in fee.

This decree further stated that Belle G. Potts and Adam Empie Sheppard held a 1/5 portion each in the two plantations for life, "with remainder in the portion in which each has a life estate to their respective issue, and if either of said life tenants should die, without issue living at his or her death, his or her share shall go to the survivor, and should the survivor die without issue then his or her share shall go to his or her heirs."

Adam Empie Sheppard, the last survivor of the nieces and nephew, died in 1934 without issue. At the time of his death, A. B. Guigon, Jr., the only child of Kate Sheppard Guigon, and Joseph Schoolfield Potts, Jr., Adam Empie Potts and James Sheppard Potts, the three sons of Belle Sheppard Potts, were the only living children of any of the four life tenants.

It is obvious that on the death of Belle Sheppard Potts in 1930, the 1/5 portion devised to her for life passed to her three sons in fee, these children being remaindermen described in the will and in the decree.

The appellants contend that they, as the issue of Belle Sheppard Potts, are entitled, by virtue of the decree of August 1, 1910, to all of the 1/5 portion devised to Adam Empie Sheppard for life.

This contention is based on the ground that their mother had answered the call for issue in the limitation stated in the decree and had survived in them, and that an intestacy could

be avoided by a reasonable construction of the word "survivor" in the limitation as "other."

[■■] There would be more force in this contention if the court, in its decree, had ended the sentence with the word "survivor." A substitution of the word "other" for "survivor" in this event would have described the remaindermen with reasonable certainty. Unfortunately for appellants' contention, "survivors" is explained in the will. In the decree it is followed by this clause: "* * * and should the survivor die without issue, then his or her share shall go to his or her heirs." Heirs is used to denote the next of kin of the survivor who takes under the statute of descents. The substitution of the word "other" for "survivor" in the decree of 1910 to determine the intention of the court would necessitate a rewriting of the decree. The intention of the court in drafting the decree is not the dominant factor. The intention of the testatrix is the matter of vital concern, unless the decree in question precludes an open determination of that intent from the will.

■■ On this point the argument of appellees is inconsistent. They state: "We earnestly urge that the construction of the will as applied by the court in the distribution of the share of Ann E. Lurty, is now controlling and that the appellants are bound by the law as pronounced and applied in that decree of August 1, 1910." If this were the only phase of the will construed by the court in that decree, this contention would seem to rest on a sound basis. The decree, however, limits the remaindermen in the absence of issue to one of two persons, and then provides that if the survivor dies without issue the remaindermen shall be his heirs. Appellees make no attempt to explain this last pertinent sentence of the decree. They simply say: "This language is not in the will." It may not be the language of the will but it is the language of the decree construing the will from which there was no appeal. If the decree of 1910, construing the will, is binding in one particular, it is binding in all particulars if the facts upon which it is based remain unchanged.

■■ When the court in 1910 denied the right of A. B.

Guigon, Jr., to share in the remainder after the death of Ann Eliza Lurty, there were two actual survivors of Mrs. Lurty then living. There was no reason to construe the will in such a way as to avoid an intestacy. The decree not only passed upon the rights of the parties in the property devised to Mrs. Lurty for life, but it adjudicated the rights of the life tenants and the remaindermen in the portions devised to Belle Sheppard Potts and Adam Empie Sheppard. If inconsistencies now appear, it is due to the changes in circumstances and facts. The law of the case is the rule of conduct as applied to the facts then existing. When there are substantial changes in the facts, the former law of the case is not inflexible.

Adam Empie Sheppard was the last of the named beneficiaries to die. He left no issue. The decree expressly declared that on his death without issue (he being the survivor), the remaindermen to that part of the estate devised to him for life should be his heirs. No substitution or transposition of words is necessary to make the meaning of the language clear. The heirs of Adam Empie Sheppard at the time of his death were the issue of his deceased sisters.

This being the situation, it is a matter of little import whether we base the decision of the case on this court's construction of the will, uninfluenced by other decrees, or whether we base it on the construction placed thereon by the decree of August 1, 1910. In either event the result is the same; that is, the administrator c. t. a. of A. B. Guigon, Jr., the only son of one sister, and Joseph Schoolfield Potts, Jr., Adam Empie Potts and James Sheppard Potts, the sons of another sister, are entitled to share equally in the distribution of the property.

The decree of the trial court is reversed and the case remanded.

*Reversed and remanded.*