# 𝔎𝔦𝔠𝔥𝔪𝔬𝔫𝔡

## J. Pemberton Penn, Jr., and Others v. The First National Bank of Danville, and Others.

May 1, 1944.

Record No. 2774.

Present, Campbell, C. J., and Holt, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Brown, Garrett & Bass*, for the appellants.

*Meade & Talbott* and *McGuire, Riely, Eggleston & Bocock*, for the appellees.

EGGLESTON, J., delivered the opinion of the court.

This appeal involves the interpretation of the will of James Gilmore Penn which was probated in the Corporation Court of the city of Danville on September 22, 1942. The First National Bank of Danville and J. Pemberton Penn were named as executors. The testator was a successful business man and left an estate consisting of personalty valued at approximately $367,000. He was survived by his widow, Mrs. Katherine Boyd Penn, but left no children.

The dominant question presented to us is the proper interpretation of ITEM Two of the will. In this item the testator recited that he had received certain property from his father, James Garbriel Penn, which he had invested in the stock of Pemberton & Penn, Incorporated, a successful concern engaged in the tobacco business in Danville. He directed that certain property of the value of $100,000 be segregated in

his estate and held in trust for the benefit of the following blood relatives of his father, and in these amounts:

$20,000 in value for the benefit of his brother, J. Pemberton Penn;

5,000 in value for the benefit of each of the three children of J. Pemberton Penn: J. Pemberton Penn, Jr., Marie Penn Watt, and Kitty Penn Fuller;

2,500 in value for the benefit of each of the four grandchildren of J. Pemberton Penn: Anne Elizabeth Penn, Mary Lee Penn, John D. Watt, Jr., and Nell Penn Watt;

20,000 in value for the benefit of. his sister, Mrs. Mary Katherine Penn;

5,000 in value for the benefit of the only child of Mrs. Mary Katherine Penn: Elizabeth Penn Carter;

2,500 in value for the benefit of each of the two grandchildren of Mrs. Mary Katherine Penn: Everett E. Carter, Jr., and Mary Penn Carter;

20,000 in value for the benefit. of his sister, Mrs. Annie Lee Penn Montague;

5,000 in value for the benefit of the only child of Mrs. Annie Lee Penn Montague: Carroll Penn Montague.

For the sake of clarity the several beneficiaries, the relationship of each to the testator, and the amount left in trust for each are shown in the table printed in the margin.[1]

This item of the will then provided:

"It is my wish and desire that the aforesaid trust fund for the benefit of each of the persons named, shall be properly set up and accounts kept therefor, and at the death of any one of the beneficiaries of said trust, then the trust fund for the benefit of the one so dying, principal and unpaid income shall pass to his or her distributees at law, provided that only those of blood kin to my father shall take.

\* \* \* \* \*

"Should any one of said beneficiaries die before I do, then the amount herein specified for that beneficiary shall be used to proportionately increase the amounts set up for the other beneficiaries.

"Since this will was prepared, but before it was signed, my beloved sister, Mrs. Mary Katherine Penn has died, but the amount provided for her is fully taken care of in Item Two of this will as originally prepared."

| [1]Name of Beneficiary | Relationship to Testator | Amount |
| --- | --- | --- |
| J. Pemberton Penn | Brother | $ 20,000 |
| Mary Katherine Penn | Sister | 20,000 |
| Annie Lee Penn Montague | Sister | 20,000 |
| J. Pemberton Penn, Jr. | Nephew | 5,000 |
| Marie Penn Watt | Niece | 5,000 |
| Kitty Penn Fuller | Niece | 5,000 |
| Elizabeth Penn Carter | Niece | 5,000 |
| Carroll Penn Montague | Nephew | 5,000 |
| Anne Elizabeth Penn | Grandniece | 2,500 |
| Mary Lee Penn | Grandniece | 2,500 |
| John D. Watt, Jr. | Grandnephew | 2,500 |
| Nell Penn Watt | Grandniece | 2,500 |
| Everett E. Carter, Jr. | Grandnephew | 2,500 |
| Mary Penn Carter | Grandniece | 2,500 |
| | | $100,000 |

After having made other bequests, the testator bequeathed, in ITEM NINE, all of the rest and residue of his estate in trust for his widow, Mrs. Katherine Boyd Penn, who was to receive the net income therefrom during her life, with the provision that "at her death all the then principal, and unpaid income remaining on hand shall go back to my blood kin living at the death of Mrs. Katherine Boyd Penn, which said blood kin and beneficiaries are named in the trust created in the second clause of my will, and said distribution to them shall be in the same proportion as the amounts set up for each beneficiary under said trust."

The widow renounced the will and the lower court decreed that she was entitled under the statute to one-half of the net personal estate of the testator. It also decreed that such renunciation had the effect of accelerating the remainders created under ITEM NINE, with the result that the residuum of the estate should pass to the testator's legatees for whom the several trusts were created by, and in the same proportions that his bequests should pass under, ITEM Two. All parties agree that these provisions of the decree are correct.

As recited in the will, Mrs. Mary Katherine Penn, one of the testator's sisters, died before the instrument was executed. Mrs. Annie Lee Penn Montague, the other sister, died shortly before the testator. The main question in dispute is the devolution of the two trust funds of $20,000 each set up in ITEM Two of the will for these two sisters. The parties agree that a proper determination of this question will likewise determine the devolution of the property under ITEM NINE of the will.

The lower court held that the testator's two sisters having died before he did, the trust funds of $20,000 set up for each of them passed absolutely to their respective distributees at law, namely: Mrs. Elizabeth Penn Carter and Carroll Penn Montague, the appellees.

The appellants, who are the testator's nephew, John Pemberton Penn, Jr., and the testator's two nieces, Mrs. Marie Penn Watt and Mrs. Kitty Penn Fuller, and the testator's grandnephews and grandnieces, contend that upon the death of the two sisters, prior to the testator, their shares of the trust fund, amounting to $40,000, should remain in the trust estate and should be used to increase proportionately the amounts set up for all of the twelve beneficiaries mentioned in ITEM Two who survived the testator.[2]  J. Pemberton Penn, who has most to gain should the appellants prevail, does not join in the appeal.  The executors likewise are neutral in this litigation.

The appellants contend that the second quoted paragraph in ITEM Two, which provides that "Should any one of said beneficiaries die before I do, then the amount herein specified for that beneficiary shall be used to proportionately increase the amounts set up for the other beneficiaries", was intended to apply to those beneficiaries who died *before* the testator, and that the first quoted paragraph, which

---

[2] According to the appellants' contention the deceased sisters' shares of the trust fund would be divided as follows:

| Name of Beneficiary | Relationship to Testator | Fractional Share | Amount |
| --- | --- | --- | --- |
| J. Pemberton Penn | Brother | 4/12 | $13,333.34 |
| J. Pemberton Penn, Jr. | Nephew | 1/12 | 3,333.34 |
| Marie Penn Watt | Niece | 1/12 | 3,333.34 |
| Kitty Penn Fuller | Niece | 1/12 | 3,333.34 |
| Elizabeth Penn Carter | Niece | 1/12 | 3,333.34 |
| Carroll Penn Montague | Nephew | 1/12 | 3,333.34 |
| Ann Elizabeth Penn | Grandniece | 1/24 | 1,666.66 |
| Mary Lee Penn | Grandniece | 1/24 | 1,666.66 |
| John D. Watt, Jr. | Grandnephew | 1/24 | 1,666.66 |
| Nell Penn Watt | Grandniece | 1/24 | 1,666.66 |
| Everett E. Carter, Jr. | Grandnephew | 1/24 | 1,666.66 |
| Mary Penn Carter | Grandniece | 1/24 | 1,666.66 |

$40,000.00

provides that "at the death of any one of the beneficiaries of said trust, then the trust fund for the benefit of the one so dying, principal and unpaid income shall pass to his or her distributees at law," was intended to apply to those beneficiaries who died *after* the testator. Since both beneficiaries here died *before* the testator, the appellants say that the shares of these deceased beneficiaries passed under the second and not under the first quoted paragraph of ITEM Two.

The trouble with this argument, which at first may seem quite plausible, is that it entirely ignores the third quoted paragraph in which the testator expressly recognizes and refers to the death of his sister, Mrs. Mary Katherine Penn, and provides that her share "is fully taken care of in Item Two of this Will as originally prepared."

It is, of course, well settled that in arriving at the intent of the testator all parts of the will are to be reconciled and each given effect if possible, and that no part thereof to which meaning and operation can be given consistent with the general intention of the testator shall be rejected. See *Walker* v. *Webster*, 95 Va. 377, 379, 28 S. E. 570; *Waters* v. *Trefouret*, 117 Va. 186, 190, 83 S. E. 1078; *Conrad* v. *Conrad*, 123 Va. 711, 716, 97 S. E. 336; *Potts* v. *Rader*, 179 Va. 722, 728, 20 S. E. (2d) 690.

If the testator had intended that Mrs. Mary Katherine Penn's share should "be used to proportionately increase the amounts set up for the other beneficiaries", under the second quoted paragraph of ITEM Two, as contended by the appellants, he would simply have added, after the quoted language, a provision that, "This paragraph shall apply to the share of my beloved sister, Mrs. Mary Katherine Penn, who has already died," or words to this effect. But instead of this he added the third paragraph which provided that the interest of Mrs. Mary Katherine Penn "is fully taken care of in Item Two of this Will as originally prepared", and this paragraph we can not reject or ignore.

The will was first prepared in the law office of Malcolm K. Harris, now deceased, in the month of March, 1937, but

was not then executed. With the attestation clause it consisted of five typewritten pages. The first quoted paragraph from ITEM Two, beginning with the words, "It is my wish and desire", appeared on the first page.

On March 29, 1937, Mrs. Mary Katherine Penn, one of the sisters of the testator, died, and in June of that year the testator returned to Mr. Harris's office and discussed with him the situation which had arisen as the result of the death of this beneficiary. The second page was rewritten and the will was executed on June 10, 1937. The testator died on August 9, 1942, thirty days after the death of his other sister, Mrs. Annie Lee Penn Montague.

It is an inescapable inference that ITEM Two "as originally prepared" was different from ITEM Two as finally written. The record shows that diligent but unsuccessful efforts were made to locate page two of the will as originally drawn, or the stenographic notes from which it was transcribed. Therefore, the only part of ITEM Two "as originally prepared", which is disclosed by the evidence, is that part which is found on page one of the will. This page contains the first quoted paragraph which provides that "at the death of any one of the beneficiaries of said trust," then the principal and unpaid income of the trust fund "shall pass to his or her distributees at law".

Since there is no evidence whatsoever that ITEM Two "as originally prepared" contained the second quoted paragraph, upon which the appellants rely, we must conclude that when the testator said in the third quoted paragraph that the amount provided for Mrs. Mary Katherine Penn "is fully taken care of in Item Two of this Will as originally prepared," he referred to the disposition provided for in the first paragraph.

The only method by which the three pertinent paragraphs of ITEM Two may be construed together, and effect given to every part of each, is by construing the word "beneficiaries" at the end of the second quoted paragraph to mean and to relate to the members of the deceased beneficiary's

own family stock—that is, those persons named in ITEM Two who are the distributees of the beneficiary dying, and who are related by blood to the testator's father, a position occupied by each of the appellees. The effect of this interpretation is to add to the second quoted paragraph the italicized words so that that paragraph will read as follows:

"Should any one of said beneficiaries die before I do, then the amount herein specified for that beneficiary shall be used to proportionately increase the amounts set up for the other beneficiaries *included in his or her stock*."

Not only does this interpretation give full effect to all three of the paragraphs in ITEM Two, but it accords with the apparent dominant intent of the testator to divide the trust fund established under ITEM Two among his blood kin according to stocks, as follows:

(1) J. Pemberton Penn, his three children, and his four grandchildren, $45,000;

(2) Mrs. Mary Katherine Penn, her daughter and only child, Mrs. Elizabeth Penn Carter, and Mrs. Penn's two grandchildren, $30,000;

(3) Mrs. Annie Lee Penn Montague, her son and only child, Carroll Penn Montague, and his possible children, $25,000.

While the same amount was given to each member of each class in each family, the testator intended, we think, to include in ITEM Two of his will limitations so that the share of any beneficiary named should, upon his or her death, pass only to the other members of his or her particular stock unless there was none.

On the other hand, should we adopt the interpretation contended for by the appellants, the result would be that J. Pemberton Penn's stock would receive $75,000 of the trust fund, whereas the testator's two deceased sisters and their

families would together receive only $25,000 of the fund.[3] It is unreasonable, we think, to assume that the testator intended any such arbitrary and unnatural disposition of his property, especially in view of the undisputed evidence of his affection for his two sisters and his niece, Mrs. Carter.

The adoption by us of the contention of the appellants would lead to a further illogical result. According to their interpretation of the will, since the testator's two sisters died before he did, their respective distributees would. receive only one-twelfth of his or her mother's share of the trust fund, or $1,666.66, under the second quoted paragraph in Item Two. And yet the appellants admit that if these sisters had died subsequent to the death of the testator, the same distributees would have received his or her mother's full share of the trust fund of $20,000 under the first quoted paragraph of Item Two. And the same would be true of

---

[3] Distribution by stocks under appellants' contention:

| | Share in Original Trust | Share of Deceased Sisters' Portion | Total |
|---|---|---|---|
| J. *Pemberton Penn stock:* | | | |
| J. Pemberton Penn | $20,000 | $13,333.34 | |
| J. Pemberton Penn, Jr. | 5,000 | 3,333.34 | |
| Marie Penn Watt | 5,000 | 3,333.34 | |
| Kitty Penn Fuller | 5,000 | 3,333.34 | |
| Anne Elizabeth Penn | 2,500 | 1,666.66 | |
| Mary Lee Penn | 2,500 | 1,666.66 | |
| John D. Watt, Jr. | 2,500 | 1,666.66 | |
| Nell Penn Watt | 2,500 | 1,666.66 | |
| | $45,000 | $30,000.00 | $75,000.00 |
| *Mary Katherine Penn stock:* | | | |
| Elizabeth Penn Carter | $ 5,000 | $ 3,333.34 | |
| Everett E. Carter, Jr. | 2,500 | 1,666.66 | |
| Mary Penn Carter | 2,500 | 1,666.66 | |
| | $10,000 | $ 6,666.66 | $16,666.66 |
| *Annie Lee Penn Montague stock:* | | | |
| Carroll Penn Montague | $ 5,000 | $ 3,333.34 | $ 8,333.34 |

the distribution of the residuum of the estate under ITEM NINE of the will.

It is inconceivable, we think, that the testator would have intended any such arbitrary and unnatural result, predicated wholly upon whether his sisters died before or after his death. It is much more likely, we think, that he intended that the share of the deceased sister should descend to her distributees in accordance with the laws of descent and distribution. See *Blankenbaker* v. *Early*, 132 Va. 408, 412, 112 S. E. 599.

On the whole we are of opinion that the trial court's interpretation of the disputed items of the will was correct, and accordingly the decree is

*Affirmed.*