COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Athey and Fulton

UNPUBLISHED

TREMON JAQUIL BURFORD

v.      Record No. 1393-23-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
AUGUST 20, 2024

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
F. Patrick Yeatts, Judge

(Matthew L. Pack; M. Pack Law, PLLC, on brief), for appellant.

(Jason S. Miyares, Attorney General; Ryan Beehler, Assistant
Attorney General, on brief), for appellee.


On May 31, 2023, a jury empaneled in the Circuit Court of the City of Lynchburg ("trial

court") convicted Tremon Burford ("Burford") of possession of a firearm by a convicted non-

violent felon and gang participation. On appeal, Burford assigns error to the trial court for:

1) admitting expert testimony about criminal street gangs; 2) admitting a recording "without proper

authentication as a business record"; and 3) "allowing a dated photo" depicting him "in a jail

jumpsuit." After examining the briefs and record in this case, the panel unanimously holds that oral

argument is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a);

Rule 5A:27(a). Finding no error, we affirm the trial court's judgment.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

# I. Background[1]

On December 3, 2020, Lynchburg Police Detective Matthew Knabb ("Detective Knabb") surveilled a residence where crimes were alleged to have occurred. During the surveillance, Detective Knabb, along with other officers, witnessed Burford both entering and exiting the house before driving away in an automobile with Desmond Rucker ("Rucker") as his passenger. After Burford drove away, law enforcement radioed Officer Zachary Miller ("Officer Miller"), who obtained information about Burford, including the fact that he was not a licensed driver. Officer Miller then attempted to conduct a traffic stop, but Burford began driving at high rates of speed attempting to elude law enforcement. Shortly thereafter, Burford crashed his vehicle and fled on foot.

Officer Miller followed on foot, eventually finding both Burford and Rucker in a nearby neighborhood. Officer Miller also found a discarded firearm near the site where Burford crashed his vehicle. Following the crash, in an interview conducted at the hospital, Burford denied staying at the surveilled house, possessing the recovered firearm, and driving the crashed vehicle. Later, when the police searched the surveilled house, they found a picture of Burford, an additional firearm, a red bandana, and a small amount of cocaine. The interior of the house was decorated primarily in red, including red furniture.

Burford filed a pre-trial motion *in limine* seeking to prevent the Commonwealth from introducing expert testimony concerning street gangs and any predicate offenses. The trial court overruled this pre-trial motion *in limine*.

---

[1] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Meade v. Commonwealth*, 74 Va. App. 796, 802 (2022) (quoting *Gerald v. Commonwealth*, 295 Va. 469 472 (2018)). "Accordingly, we regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *Id.* (citing *Gerald*, 295 Va. at 473).

During trial, Detective Knabb as well as Detective Jesse Babbitt ("Detective Babbitt") were both deemed qualified as expert witnesses by the trial court and thus permitted to provide expert testimony on "gangs and gang related activity." Detective Knabb testified first, identifying Rucker, Kerry Martin ("Martin"), Torrest McDaniel ("McDaniel"), and Dwight Gilmore ("Gilmore") to the jury as known members of the Bloods street gang. Detective Knabb further advised the jury that he had reviewed a jail visit video call, recorded on November 21, 2020, which had been initiated by Martin and another known Bloods street gang member who was in prison at the time.[2] Detective Knabb identified several of the "visitors" on the call as Bloods street gang members. Detective Knabb further told the jury that he witnessed Burford appearing on the chat as one of the gang members participating in the jail video call and he recognized the living room of Burford's house as the location from which the jail video chats originated. He noted that Burford was wearing red in the video and referred to the location of the video call as his home.[3] Detective Knabb also advised the jury that, during the same video call, he recognized that Burford's residence contained a handgun which matched the handgun he found at the scene of the crash.

In relation to this video evidence, Lieutenant Dennis Stump ("Lieutenant Stump") testified at trial that he was responsible for monitoring inmate phone calls and video chat systems at the Blue Ridge Regional Jail. He noted that the jail used a GlobalTel ("GTL") system to monitor phone calls and video chats. Lieutenant Stump explained that the system was owned by Biopath and that the calls and video chats were stored on a Cloud-based system, thereby permitting jail employees or law enforcement officers to monitor or download calls or chats. He further testified that videos were time and date-stamped and confirmed that the jail video introduced at trial appeared to accurately

---

[2] This call was a virtual visit for Martin and another inmate by the individuals who were at Burford's house.

[3] On the call, Burford referred to the residence as his house.

- 3 -

reflect the time and date of the video chat as 9:18 p.m. on November 21, 2020. Lieutenant Stump also testified that he could not edit or change these video recordings.

Next, the Commonwealth entered the prior sentencing order of Martin for attempted burglary and assault and battery into evidence confirming that Martin had previously admitted "to being a member of the *Nine Trey Gangster* set of the *Bloods*, a criminal street gang." Detective Knabb also opined concerning various known behaviors used to signal membership in a specific street gang including wearing specific-colored bandanas and wearing specific clothing. He then explained to the jury that the color associated with the Bloods street gang is red and that, in his expert opinion, the red furniture and decorations seen in Burford's house were a signal that he was a member. Burford objected, claiming that Detective Knabb's expert testimony was not based on his own personal knowledge but was instead based on hearsay. The trial court overruled his objection.

Detective Babbitt then provided further expert testimony based on his experience in monitoring the Bloods street gang in Lynchburg. Detective Babbitt advised the jury that he had spent much of his law enforcement career investigating gang members, gang membership, and crimes committed by gangs. He explained to the jury that the Bloods criminal organization consisted of two subsets in Lynchburg, the "456 Pyru" set and the "Nine Trey" set. He also advised the jury that the two subset street gangs often worked together to commit crimes, noting the names of some of their members. He also testified that both gangs are nationally affiliated. Burford objected to naming specific gang members on hearsay grounds, but that objection was also overruled.

Detective Babbitt then confirmed that he was not involved in any current criminal prosecutions of other street gang members and did not know when any specific members joined the Bloods. Detective Babbitt further testified concerning the presence of gang-related tattoos on members' bodies. He opined that, in his expert opinion, it would be dangerous for a non-gang

- 4 -

member to exhibit a gang tattoo and that if a gang member left a gang, he would be required to remove or cover any gang-related tattoos.

The Commonwealth also admitted 2007 sentencing orders which included gang membership admissions by McDaniel and Gilmore as well as several photographs of Burford's tattoos which included many known gang symbols. The photograph of Burford and his gang-related tattoos was taken three years after the alleged crime and depicted him in a jail-issued orange jumpsuit. Burford objected to the admission of the photographs, arguing that the pictures were highly prejudicial and lacked probative value because they had been taken three years after the conduct at issue in this case. The Commonwealth responded that the photographs of the tattoos were probative and relevant to the issue of whether Burford was a gang member. The trial court overruled Burford's objection.

After the Commonwealth presented its case in chief, Burford moved to strike. The trial court then denied his motion and proceeded to instruct the jury. Following the parties' closing arguments, the jury found Burford guilty of possession of a firearm by a convicted non-violent felon and for participating in a gang. Burford appealed.

## II. ANALYSIS

### A. *Standard of Review*

"[T]he determination of the admissibility of relevant evidence is within the sound discretion of the trial court subject to the test of abuse of that discretion." *Pulley v. Commonwealth*, 74 Va. App. 104, 118 (2021) (alteration in original) (quoting *Jones v. Commonwealth*, 71 Va. App. 597, 602 (2020)). "A reviewing court can conclude that 'an abuse of discretion has occurred' only in cases in which 'reasonable jurists could not differ' about the correct result." *Id.* (quoting *Atkins v. Commonwealth*, 68 Va. App. 1, 7 (2017)). A trial "court has 'broad discretion' regarding the admission of evidence and . . . any ruling on admissibility will not be overturned absent an 'abuse of

discretion.'" *Vera v. Commonwealth*, 77 Va. App. 271, 282 (2023) (quoting *Conley v. Commonwealth*, 74 Va. App. 658, 670 (2022)).

      B. *The trial court did not abuse its discretion in permitting expert testimony on gang participation.*

Burford initially assigns error to the admission of statements within the expert testimony of Detectives Knabb and Babbitt, claiming that the objectionable statements were inadmissible hearsay. We disagree.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801(c). "Hearsay is inadmissible unless permitted by an exception, and the party offering the evidence must 'clearly show' that the exception applies." *Khine v. Commonwealth*, 75 Va. App. 435, 444-45 (2022) (quoting *Clay v. Commonwealth*, 33 Va. App. 96, 104 (2000) (en banc), *aff'd*, 262 Va. 253 (2001)).

On brief, Burford fails to identify any specific statement that allegedly constitutes hearsay. Instead, he assigns error to the admission of the sentencing orders of known Bloods street gang members but fails to identify or explain how any statements in the orders constitute hearsay. Under Rule 5A:20(e), this Court "is entitled to have the issues clearly defined and to be cited pertinent authority" in appellant's brief, and unsupported assertions of a litigant that do not meet this requirement need not be considered. *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008)). Burford contends that the expert witness detectives were improperly allowed to testify about "numerous" pieces of evidence that were "clearly hearsay." However, without specifically identifying the statements about which he complains, and his failure to cite to any specific authority in support of his assignment of error, we

cannot determine whether the trial court abused its discretion.[4]  Therefore, we find this issue

waived.  *Id.*

>    C. *The trial court did not err by admitting the video recording of Burford without*
>       *authentication as a business record.*

Burford also asserts that the trial court erred by admitting the video recording "without

proper authentication as a business record," arguing that the video recording was inadmissible

hearsay that did not fall under any exception to the rule.[5]  We disagree.

"The law of the case is the rule of conduct as applied to the facts then existing."  *Potts v.*

*Rader*, 179 Va. 722, 733 (1942).  "When there are substantial changes in the facts, the former law of

the case is not inflexible."  *Id.*  "Pursuant to the 'law of the case' doctrine, when a party fails to

challenge a decision rendered by a court at one stage of litigation, that party is deemed to have

waived her right to challenge that decision during later stages of the 'same litigation.'"  *Miller-*

*Jenkins v. Miller-Jenkins*, 276 Va. 19, 26 (2008).

Similarly, "Rule 5A:18 contains the contemporaneous objection rule applicable to the Court

of Appeals."  *Maxwell v. Commonwealth*, 287 Va. 258, 264 (2014).  Rule 5A:18 provides, in

relevant part:

> No ruling of the trial court . . . will be considered as a basis for
> reversal unless an objection was stated with reasonable certainty at
> the time of the ruling, except for good cause shown or to enable this
> Court to attain the ends of justice.

---

[4] To the extent Burford invokes the "ends of justice" exception to Rule 5A:18, we note that he did not present any argument in support of this claim.  More importantly, since Burford did not identify the specific admitted evidence he objects to on appeal, we decline to address the merits of his argument.  Rule 5A:20(c)(1), (e).

[5] To the extent Burford further argues that no foundation was made for "the report or the computer information" under any hearsay exception, we note that he again failed to identify the specific evidence to which he is objecting, so we do not address this portion of his argument.  *See* Rule 5A:20(e).

For an objection to meet the requirements of Rule 5A:18, it must also "be made . . . at a point in the proceeding when the trial court is in a position, not only to consider the asserted error, but also to rectify the effect of the asserted error." *Maxwell*, 287 Va. at 265 (alteration in original) (quoting *Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010)).

Here, the Commonwealth proffered that the statements of the other callers were being introduced simply to provide context to Burford's own statement and were not being introduced for the truth of the matter asserted. The trial court admitted the statements only for that limited purpose. Also, Burford failed to contemporaneously object to the trial court's finding that the statements were not hearsay. Rule 5A:18. "The unchallenged finding of the trial court is now the law of the case and binding on the parties for purposes of appeal." *Neff v. Commonwealth*, 63 Va. App. 413, 416 (2014). Thus, since the trial court's finding was not objected to below, we need not address whether the statements fell under the business or official records exceptions to the rule against hearsay as they were determined by the court not to be hearsay.

D. *The trial court did not err when it admitted photos showing Burford in a prison jumpsuit.*

Burford further asserts on appeal that the trial court erred in admitting the photos of his tattoos taken while he was wearing a jail jumpsuit, claiming that the photographs were highly prejudicial because they depicted him wearing identifiable prison clothes, inflaming the jury and allowing them to infer his guilt.[6] We disagree.

"The admissibility of evidence is a matter of law to be determined by the trial judge." *Evans-Smith v. Commonwealth*, 5 Va. App. 188, 196 (1987). "Generally speaking, 'evidence is

---

[6] To the extent that Burford asserts that the admission of the pictures deprived him of due process, we decline to address that argument because his assignment of error does not allege a constitutional violation. *See* Rule 5A:20(c)(1) ("Only assignments of error listed in the brief will be noticed by this Court."); *Riddick v. Commonwealth*, 72 Va. App. 132, 146 (2020) (stating that an appellate court "cannot 'consider issues . . . not encompassed by [the] assignment of error'" (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 290 (2017))).

admissible if it is both relevant and material,' and it is inadmissible if it fails to satisfy these criteria." *Via v. Commonwealth*, 42 Va. App. 164, 183 (2004) (quoting *Evans-Smith*, 5 Va. App. at 196). "Evidence is relevant if it has any logical tendency, however slight, to establish a fact at issue in the case." *Id.* (quoting *Ragland v. Commonwealth*, 16 Va. App. 913, 918 (1993)). "Evidence is material if it relates to a matter properly at issue." *Id.* (quoting *Evans-Smith*, 5 Va. App. at 196).

However, under Virginia Rule of Evidence 2:403(a)(i), evidence that would otherwise be admissible may be excluded if "the probative value of the evidence is substantially outweighed by . . . the danger of unfair prejudice." "The fact that evidence is highly prejudicial to a party's claim or defense, in and of itself, 'is not a proper consideration in applying the balancing test.'" *Fields v. Commonwealth*, 73 Va. App. 652, 672 (2021) (quoting *Lee v. Spoden*, 290 Va. 235, 252 (2015)). "Instead, the [trial] court must determine whether the probative value of the evidence is *substantially* outweighed by its unfair or unduly prejudicial effects." *Id.*

"Rule 2:403's requirement that only *unfair* prejudice may be considered as grounds for non-admission 'reflects the fact that all probative direct evidence generally has a prejudicial effect to the opposing party.'" *Id.* at 673 (quoting *Lee*, 290 Va. at 251). "[T]he nature of the evidence must be such that it generates such a strong *emotional* response that it is unlikely that the jury could make a *rational* evaluation of its proper evidentiary weight." *Id.* The evidence being contested on appeal here did not contain any content that would inherently prevent jurors from rationally considering and weighing it with the other evidence.

It is also true that "[t]he responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court." *Ortiz v. Commonwealth*, 276 Va. 705, 715 (2008) (quoting *Spencer v. Commonwealth*, 240 Va. 78, 90 (1990)). Hence, we cannot say that the trial court was plainly wrong in balancing the probative

value of the pictures against their prejudicial effect.  Therefore, we will leave the trial court's decision undisturbed.

## III.  CONCLUSION

Accordingly, finding no error, we affirm the trial court's judgment.

*Affirmed.*