COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Malveaux and Fulton
Argued at Fredericksburg, Virginia


LAQUINTA DIANE MORRIS

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1075-22-4              JUDGE MARY BENNETT MALVEAUX
                                                         OCTOBER 3, 2023
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
James A. Willett, Judge

Danielle Brown (Danielle S. Brown Law, PLLC, on brief), for
appellant.

Lindsay M. Brooker, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Laquinta Diane Morris ("appellant") appeals her conviction by a jury for abuse or neglect of

an incapacitated adult for whom she was responsible, resulting in serious bodily injury or disease, in

violation of Code § 18.2-369.  She argues that the trial court misapplied Virginia Rule of Evidence

2:901 governing the authentication of evidence, misapplied the silent witness doctrine governing the

admissibility of photographs and video evidence, and abused its discretion by admitting videos that

were unduly prejudicial.  Finding no error, we affirm.

I.  BACKGROUND

"On appeal, we review the evidence in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Myers v. Commonwealth*, 299 Va. 671, 674 (2021) (quoting

*Vasquez v. Commonwealth*, 291 Va. 232, 236 (2016)).  "Further, we 'discard the evidence of the

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Barnett v. Commonwealth*, 73 Va. App. 111, 115 (2021) (quoting *Yerling v. Commonwealth*, 71 Va. App. 527, 530 (2020)).

A.J.,[1] a 27-year-old woman, lived in a group home for individuals with developmental delays. A.J. had been diagnosed with an intellectual disability, major depression, and adjustment disorder. Her conditions impacted her ability to communicate and rendered her "very limited in her words." Appellant worked at the group home, where she was responsible for assisting A.J. with hygiene, food, and medication.

On October 30, 2019, Ernest Adu-Afram, an operations manager responsible for the group home, received notice of an incident involving A.J. When Adu-Afram arrived at the home, appellant informed him that "she was just providing care for [A.J.], and that there was a behavioral issue, and it escalated." Appellant did not have any visible injuries, but A.J. had several, including a bruise on her cheek, a ripped-out braid, and scratches on and around her face. Frederic Amamoo, another group home employee, observed that A.J. had a black eye and swollen face. A.J. was taken to the hospital where emergency room staff observed visible injuries to her face and swelling around her eyes. A.J.'s attending physician observed a large hematoma near her eye, and a CT scan revealed an acute fracture of one of the bones of A.J.'s eye socket.

Kimberly Ducharme, the group home's director of investigation, reviewed recordings from the home's video surveillance system for evidence of the cause of A.J.'s injuries. She found two video recordings that depicted portions of the incident (the "surveillance videos") and used her cell phone to make recordings of them (the "cell phone videos"). At trial, Ducharme testified about the group home's surveillance system and explained that it included motion-activated cameras that

---

[1] We use initials, rather than the victim's name, to protect her privacy.

automatically began recording after detecting motion. Any recorded video was stored in "the VNR, the Video Network Recording," a device located in the home that was also remotely accessible through "the Cloud." Ducharme told the jury that data was kept in the Cloud for approximately 30 days in a secure system managed by the home's IT department. A username and password were required to obtain system access. Ducharme did not know how many people possessed credentials to access the system, but believed it was more than one and less than ten.

Ducharme testified that the "date and time stamp" displayed in the surveillance videos could not be altered and that the recording system was functioning properly on the date of the incident. She explained that she made the cell phone videos by "record[ing] the . . . playback" of the surveillance videos on the system's computer because "[t]hat was the only way [she] knew how to get the footage." Ducharme confirmed that there was no way to alter or edit the surveillance videos while they were playing on the computer. She also confirmed that the DVD of her cell phone videos that was played in court was a "copy of the [surveillance video] footage that [she] examined" and that she had not altered the cell phone videos before burning them to the DVD. Ducharme further testified that she had reviewed the cell phone videos contained on the DVD, and agreed that they "appear[ed] the same on th[e] DVD as [they] did on the server and . . . computer" when she reviewed the surveillance videos on October 30, 2019.

The first cell phone video of the surveillance footage depicted A.J. walking down a hallway and out of sight, with appellant following and likewise disappearing from view. The two women soon reemerged into view, slapping at and grappling with each other before falling to the floor. Appellant then struck A.J., pinned her arms to the ground, pushed her face to the floor, and sat on and immobilized her. Eventually, the two women stood, but they quickly began grappling again. Appellant pulled A.J. back to the floor by her hair, briefly sat on her with A.J.'s face to the floor, and then dragged A.J. out of view by her hair. Moments later, appellant pulled A.J. back into the

- 3 -

camera's view and struck her multiple times. When A.J. attempted to strike appellant, who was standing over her, appellant repeatedly struck A.J. and jerked her by the neck before again sitting on her and pinning her to the floor. Although the total length of the first cell phone video that was admitted into evidence was 10 minutes and 26 seconds, it depicted Ducharme adjusting the playback speed of the surveillance video. Accordingly, the surveillance video's time stamps indicated that a total of almost 15 minutes had elapsed in the underlying surveillance video.

The second cell phone video of the surveillance footage depicted A.J. walking down a hallway and out of view up a staircase, with appellant following and standing at the foot of the stairs. A.J. then descended the stairs, and the two women began slapping at and grappling with each other before appellant pulled A.J. down the hallway by her shirt. The playback time of the second cell phone video was 33 seconds, although the surveillance video's timestamps indicated that 50 seconds had elapsed in the underlying surveillance video.

When the Commonwealth moved the admission of the cell phone videos, counsel for appellant moved to voir dire Ducharme. She argued that Ducharme would be unable to testify about how the underlying surveillance videos had been "kept, stored, or whether it's digital or analog," and noted that the proffered evidence was "a recording of a recording" and the "time stamps on the video do not sync up to how much time . . . actually elapsed." The court stated that it thought appellant's objections went to the videos' weight rather than their admissibility, but instructed the Commonwealth's attorney that she would "have to set some basis for what this video shows."

The Commonwealth's attorney further questioned Ducharme about the cell phone videos before again moving their admission. Counsel for appellant objected, stating that she "still [had] foundational questions." The court permitted counsel for appellant to voir dire Ducharme about the surveillance system, after which counsel reiterated her concerns about how the underlying

- 4 -

surveillance videos had been stored, who may have had access to them, and the fact that the proffered evidence was "a recording of a recording. That in and of itself . . . raises a lot of authenticity issues."

The court ruled that Ducharme had established herself as a witness qualified to testify on authentication matters, overruled appellant's objection, and received the cell phone videos into evidence. The Commonwealth was permitted to play the cell phone videos for the jury.

While the jury was viewing the cell phone videos, counsel for appellant moved to strike the videos, reiterating her concerns about "authenticity and foundation" and contending that the cell phone videos were "inauthentic." Outside the presence of the jury, counsel for appellant argued that for the cell phone videos to be admissible, "this is supposed to be a true and accurate depiction of how these events transpired . . . . [Ducharme] has testified that this is true and accurate. She's not there, though. She didn't actually see anything happen at the time in that she was not physically present." The Commonwealth's attorney argued in response that an adequate foundation for admission of the cell phone videos had been laid and that they were admissible as a "silent witness." The court overruled appellant's objection, stating that "[t]he authentication requirement, Rule 2:901, is simply that there's sufficient evidence to support the finding that the thing in question is what its proponent claims it to be. I think the arguments that [counsel] had . . . , they're arguments for the jury in closing, but don't govern the admissibility of the tape."

Appellant testified in her own defense. She stated that A.J. initiated physical contact between the two women by punching her in the side of the head and that A.J. then "went in action mode and started coming at me." Appellant tried to "grab . . . [A.J.'s] wrists to kind of restrain [her] hands," as appellant had been shown how to do in her training, and asked A.J., "what are you doing?" and "why are you . . . fighting me?" A.J. then threatened to kill appellant. Appellant stated that "[t]he force that [A.J.] was using was very excess[ive]" and that she called for other staff to

help her, but no one came to assist her in restraining A.J. The two women "fell several times" during their altercation when A.J. "pulled [appellant]," and appellant "definitely was in fear for [her] life" and "felt like [she] had to self-defend [her]self." Appellant also testified that coworkers had told her A.J. had a reputation for violence and that she had seen A.J. attack another staff member the month before her altercation with A.J.

The jury convicted appellant of abuse or neglect of an incapacitated adult for whom she was responsible, resulting in serious bodily injury or disease, and appellant filed a motion to set aside the verdict. At the hearing on the motion, appellant argued that the cell phone videos failed to meet "basic foundational requirements [of] admissibility" and that in the absence of "any other witnesses who could say what happened, this video was the key" to her conviction.[2] The trial court denied the motion, stating, "I think the foundation was adequate" and that "the silent witness doctrine is perfectly applicable."

This appeal followed.

## II. ANALYSIS

### A. Authentication of the Cell Phone Videos

Appellant argues that because Ducharme did not create the underlying surveillance videos, and because time stamp discrepancies rendered the surveillance videos "demonstrably unreliable," the Commonwealth failed to lay a sufficient foundation to admit "the subject matter of the recordings"—i.e., the images of the altercation. Accordingly, appellant contends, the cell phone videos failed to satisfy the authentication requirement of Virginia Rule of Evidence 2:901, and the trial court erred in admitting them.[3] We disagree.

---

[2] A.J.'s conditions rendered her unavailable to testify at trial.

[3] Appellant also assigns error to the trial court for "Misapplying the 'Silent Witness' Doctrine to Admit the Recordings of the Recordings," alleging that "[t]he Commonwealth . . .

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Vera v. Commonwealth*, 77 Va. App. 271, 281 (2023) (quoting *Conley v. Commonwealth*, 74 Va. App. 658, 670 (2022)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Cellucci v. Commonwealth*, 77 Va. App. 36, 46 (2023) (en banc) (quoting *Commonwealth v. Swann*, 290 Va. 194, 197 (2015)). "'[B]y definition,' however, a trial court 'abuses its discretion when it makes an error of law.'" *Williams v. Commonwealth*, 71 Va. App. 462, 487 (2020) (alteration in original) (quoting *Coffman v. Commonwealth*, 67 Va. App. 163, 166 (2017)).

"Ordinarily, the admissibility of videotape films is governed by the same rules which apply to the admission of photographs or motion pictures." *Alvarez Saucedo v. Commonwealth*, 71 Va. App. 31, 46 (2019) (quoting *Stamper v. Commonwealth*, 220 Va. 260, 271 (1979)). "If the court determines that the information on the tape is relevant" and that its contents' "probative value . . . outweighs any prejudicial effect, it should be admitted. Before asking the court to

---

moved to admit [the cell phone videos] under the 'silent witness' theory." However, the record does not support that the trial court applied the "silent witness" doctrine in ruling that the cell phone videos were admissible. Although appellant objected to the cell phone videos on foundational grounds prior to their admission into evidence, the Commonwealth did not articulate a "silent witness" argument at that point; nor did the trial court articulate a "silent witness" rationale in ruling that the cell phone videos were admissible, stating simply that appellant's foundation objections were overruled. Only when appellant moved to strike the cell phone videos after they had been admitted into evidence, and while they were being played for the jury, did the Commonwealth argue that they "may be admitted as a silent witness." Then, in denying appellant's motion to strike, the court did not articulate a "silent witness" rationale; rather, it stated only that the cell phone videos had been authenticated and appellant's arguments were "for the jury in closing, but don't govern the [videos'] admissibility." Thus, although the trial court ultimately ruled that "the silent witness doctrine is perfectly applicable" when denying appellant's post-conviction motion to set aside, there is no evidence in the record that the "silent witness" doctrine was a basis of the court's much earlier ruling "to Admit the Recordings of the Recordings." Accordingly, we do not reach the merits of appellant's second assignment of error. *See Gibson v. Commonwealth*, 276 Va. 176, 180-81 (2008) (holding assignment of error was not properly before the Court because it was "based upon a faulty premise concerning what actually transpired in the trial court" and "the record reflect[ed] no ruling of the trial court" to the effect asserted by appellant).

admit a videotape into evidence, however, the party offering it must authenticate it." *Brooks v. Commonwealth*, 15 Va. App. 407, 410 (1992) (citation omitted); *see also Midgette v. Commonwealth*, 69 Va. App. 362, 375 n.4 (2018) (quoting *Brooks* for same proposition). This principle comports with the "general rule" that "before evidence can be admitted in any case, the proponent bears the burden of presenting . . . 'evidence sufficient to support a finding that the thing in question is what its proponent claims.'" *Canada v. Commonwealth*, 75 Va. App. 367, 377 (2022) (quoting Va. R. Evid. 2:901). Accordingly, "[t]he authentication inquiry is a narrow one and is only concerned with the genuineness of the offered evidence." *Id*. at 377 n.4; *cf. Snowden v. Commonwealth*, 62 Va. App. 482, 485 (2013) ("Authentication is . . . the process of showing that a document is genuine and that it is what its proponent claims it to be." (quoting *Owens v. Commonwealth*, 10 Va. App. 309, 311 (1990), *overruled in part by Waller v. Commonwealth*, 278 Va. 731 (2009))). "The measure of the burden of proof with respect to factual questions underlying the admissibility of evidence is proof by a preponderance of the evidence." *Bista v. Commonwealth*, ___ Va. App. ___, ___ (Sep. 12, 2023) (en banc) (quoting *Campos v. Commonwealth*, 67 Va. App. 690, 702 (2017)).

Here, under the specific facts and circumstances of this case, the cell phone videos satisfied the authentication requirement of Rule 2:901. In offering the cell phone videos as evidence of the altercation between A.J. and appellant, the Commonwealth represented that the images of the altercation contained within them were genuine and what it claimed them to be. Although Ducharme did not herself record the surveillance videos that, the parties agree, captured the altercation, she did record them in the cell phone videos that appellant "does not dispute" she "authenticated . . . because she created them." Ducharme also testified that the underlying surveillance videos captured in her cell phone videos were produced by an automated, on-site recording and storage system with limited access secured by username and

- 8 -

password protection. She recorded the cell phone videos from the surveillance videos the same day the surveillance system recorded the altercation, and she stated that the system was functioning properly that day. Ducharme additionally testified that there was no way to edit the surveillance videos during playback on the computer from which she made her cell phone recordings. She also testified that the images of the altercation "appear[ed] the same" in her cell phone videos "as [they] did on the server and . . . computer" when she viewed them the day of the altercation. Thus, despite discrepancies in the playback speeds between the cell phone videos and the underlying surveillance videos, the preponderance of the evidence supports that the cell phone videos' contents—i.e., the images of the altercation between A.J. and appellant—were reliably genuine and what the Commonwealth represented them to be. Accordingly, they were properly authenticated as required by Rule 2:901. And because the cell phone videos, under the specific facts and circumstances of this case, satisfied the Rule's authentication requirement, we cannot say that the trial court abused its discretion by admitting those videos.

## B. Prejudice to Appellant

Appellant argues that "the admission of the cell phone recordings showing the security footage was [an] abuse of discretion because the modified security footage was unduly prejudicial to [her]." Specifically, she contends that because of an apparent discrepancy between the playback speeds of the underlying surveillance videos and the cell phone videos admitted into evidence, the videos seen by the jury "d[id] not present a clear picture of what happened" or "reflect reality." We disagree.

"[W]e review a trial court's decision to admit or exclude evidence using an abuse of discretion standard and, on appeal, will not disturb trial court's decision to admit evidence absent a finding of abuse of that discretion." *Warren v. Commonwealth*, 76 Va. App. 788, 802 (2023) (quoting *Avent v. Commonwealth*, 279 Va. 175, 197 (2010)). "Applying this standard, 'we do not substitute our judgment

for that of the trial court.  Rather, we consider only whether the record fairly supports the trial court's action.'" *Id*. (quoting *Satterwhite v. Commonwealth*, 56 Va. App. 557, 563 (2010)).

"Generally, '[a]ll relevant evidence is admissible.'" *Jones v. Commonwealth*, 71 Va. App. 70, 88 (2019) (alteration in original) (quoting Va. R. Evid. 2:402(a)).  "'Relevant evidence' means evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." *Warren*, 76 Va. App. at 802 (quoting Va. R. Evid. 2:401).  However, "[r]elevant evidence may be excluded if 'the probative value of the evidence is substantially outweighed by . . . the danger of unfair prejudice.'" *Fields v. Commonwealth*, 73 Va. App. 652, 672 (2021) (quoting Va. R. Evid. 2:403(a)(i)); *see also Commonwealth v. Proffitt*, 292 Va. 626, 639 (2016) (noting that this determination requires a "balancing test").

"The requirement under Rule 2:403 that only 'unfair' prejudice may be considered reflects the fact that all probative direct evidence generally has a prejudicial effect to the opposing party." *Lee v. Spoden*, 290 Va. 235, 251 (2015).  Accordingly, because "[a]ll evidence tending to prove guilt is prejudicial to an accused, . . . the mere fact that such evidence is powerful because it accurately depicts the gravity and atrociousness of the crime or the callous nature of the defendant does not thereby render it inadmissible." *Fields*, 73 Va. App. at 672-73 (quoting *Powell v. Commonwealth*, 267 Va. 107, 141 (2004)); *see also Powell*, 267 Va. at 141 ("[D]irect evidence . . . is rarely subject to exclusion on the ground that it would be unfairly prejudicial.").  "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Lee*, 290 Va. at 251-52 (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (construing the federal analogue to Va. R. Evid. 2:403)).  It "refers to the tendency of some proof to inflame the passions of the trier of fact, or to invite decision based upon a factor unrelated to the elements of the claims and defenses in the pending case." *Id*. at 251.  "Put . . . succinctly, the nature of the evidence must be such that it generates such a strong *emotional* response that it is unlikely that the jury could

make a *rational* evaluation of its proper evidentiary weight." *Fields*, 73 Va. App. at 673; *see also id.* (citing, as "[c]ommon examples of such evidence," "particularly graphic crime scene or autopsy photos" because "their shock effect prevents a . . . jury from being able to properly evaluate or weigh them in the context of the other evidence").

Here, appellant was the only witness available to testify about what transpired between herself and A.J. Although appellant did not deny an altercation had occurred between the two women, she told the jury that A.J. had attacked and threatened to kill her and she responded by engaging in self-defense. Accordingly, the cell phone video evidence of the two women's altercation was relevant and highly probative of whether appellant had abused or neglected A.J. as alleged in the indictment. With respect to this argument, appellant does not allege on brief that the sequential, frame-by-frame images of the altercation captured by the surveillance videos were themselves altered or falsified in any way prior to or during their recording by the cell phone videos, or that those images were in any way inaccurate. Rather, her contention is that a differential in the playback speed of these uncontested images was sufficient to render the cell phone recordings of the images incapable of "reflect[ing] reality" or providing the jury with "a clear picture of what happened." But nothing about the differential in playback speed prevented the jury from comparing the uncontested images they witnessed with appellant's own account of the altercation, and determining the credibility of appellant's testimony and the weight to accord that testimony and the cell phone videos. While the cell phone videos depicted the "gravity and atrociousness" of the altercation that led to A.J.'s injuries, *Fields*, 73 Va. App. at 672 (quoting *Powell*, 267 Va. at 141), they did not "suggest decision on an improper basis, . . . [such as] an emotional one," *Lee*, 290 Va. at 252 (quoting *Old Chief*, 519 U.S. at 180), or "invite decision based upon a factor unrelated to the elements of the claims and defenses in the . . . case," *id.* at 251. Accordingly, because the cell phone video evidence was not of such nature to prevent the jury from "mak[ing] a *rational* evaluation of

its proper evidentiary weight," the trial court did not abuse its discretion by admitting the videos. *Fields*, 73 Va. App. at 673.

### III.  CONCLUSION

We hold that under the particular facts and circumstances of this case, the trial court did not abuse its discretion by admitting the Commonwealth's video evidence.  Accordingly, we affirm.

*Affirmed.*