PRESENT: Lemons, C.J., Goodwyn, Mims, McClanahan, Powell, and Kelsey, JJ., and Millette, S.J.

PAUL LEE, ET AL.

v. Record No. 141541

LISA SPODEN

OPINION BY
JUSTICE CLEO E. POWELL
September 17, 2015

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David S. Schell, Judge

Paul Lee ("Lee") and Strategic Health Care Company, Inc. ("SHC") appeal the judgment of the trial court awarding Lisa Spoden ("Spoden") $138,880.50. Specifically, Lee and SHC argue that Spoden's claims were barred by the doctrine of res judicata, that the trial court erred in excluding evidence of a prior ruling related to the real property at issue in this case and that the verdict should have been set aside on the grounds that it exceeded the amount Spoden sought in her ad damnum.

I. BACKGROUND

In 1994, Lee started SHC, a consulting company providing services to healthcare organizations and professionals. In 1995, Lee and Spoden married. That same year, Lee granted Spoden a 50% ownership interest in SHC.[1] In 2004, SHC purchased real property in Sarasota, Florida (the "Florida Property").

In 2009, Spoden filed for divorce. As part of the divorce proceeding, Lee and Spoden entered into a written agreement (the "Term Sheet") which operated as a property settlement agreement. The Term Sheet provided, among other things, that:

- Spoden would relinquish her 50% ownership interest in SHC to Lee;

---

[1] It is unclear from the record whether Lee's grant of 50% ownership preceded or followed the marriage.

- Spoden would become a salaried employee of SHC with the title of Senior Vice President of Business Development until the sale of the company;

- Spoden would receive a guaranteed salary, all benefits (i.e., health insurance, life insurance, etc.), a car allowance, and a budget for business development;

- Spoden's assistant would remain an employee of SHC and receive all benefits that other full time employees receive (i.e., health insurance, life insurance, etc.) and a car allowance; and

- SHC would continue to own the Florida Property, but Spoden would "direct use of the property" and, upon the sale of the Florida Property, Spoden would "receive all proceeds after payment of all required fees and taxes;"

The Term Sheet was incorporated, but not merged, into the final divorce decree.

On May 2, 2013, Spoden filed a complaint against Lee and SHC, alleging breach of contract and breach of fiduciary duty. Among other things, Spoden claimed that Lee and SHC had violated the Term Sheet by:

- preventing Spoden from functioning as Senior Vice President of Business Development;

- taking improper deductions from her paycheck;

- failing to reimburse Spoden's assistant for expenses that other employees are reimbursed for; and

- listing the Florida Property for sale without her knowledge or permission.

As a result, Spoden sought a declaratory judgment, specific performance, a permanent injunction and damages.

Lee and SHC demurred to Spoden's claims for declaratory judgment, specific performance, permanent injunction and damages related to the alleged breach of fiduciary duty;

2

however Lee and SHC did not demur to Spoden's claim for damages related to breach of contract. At the hearing on the matter, the trial court noted, sua sponte, that the appropriate vehicle for Spoden's breach of fiduciary duty, declaratory judgment, specific performance, and permanent injunction claims was a rule to show cause why Lee should not be held in contempt for violating the divorce decree. In its order sustaining the demurrer, the trial court stated that Spoden's breach of fiduciary duty, declaratory judgment, specific performance, and permanent injunction claims "may be raised in a rule to show cause" and that Spoden "shall file the petition for a rule to show cause within 30 days." The trial court further allowed Spoden to amend her complaint to allege her breach of contract claim.

Spoden filed her amended complaint on September 6, 2013. On September 20, 2013, she filed a petition for a rule to show cause against both Lee and SHC.[2] In her petition, Spoden alleged that Lee had intentionally violated the Term Sheet by, among other things,

- preventing Spoden from functioning as Senior Vice President of Business Development;

- taking improper deductions from her paycheck;

- failing to reimburse Spoden's assistant for expenses that other employees are reimbursed for; and

- listing the Florida Property for sale without her knowledge or permission.

At a hearing on the rule to show cause (the "contempt proceeding"), the trial court heard evidence on Spoden's petition. After hearing the evidence and argument from the parties, the trial court made several factual findings and concluded that Lee had not violated the Term Sheet.

---

[2] Notably, Spoden initially filed the petition for a rule to show cause using the same case number as her breach of contract action (CL-2013-9213). However, the parties agreed that the case upon which the rule to show cause was based is the original divorce action (CL-2009-2730). Therefore, in a consent order dated November 20, 2013, the trial court amended the case number for the rule to show cause to CL-2009-2730.

In a written order dated January 2, 2014, the trial court determined that SHC was not bound by the Term Sheet as it was not a signatory to either the divorce decree or the Term Sheet. It also expressly stated that "SHC owns the [Florida Property] and has the right to sell the Property." After the final order in the contempt proceeding was entered, SHC sold the Florida Property on March 14, 2014.

One week later, on March 21, 2014, Lee and SHC moved for summary judgment in the breach of contract action based on res judicata. Lee and SHC argued that Spoden was precluded from relitigating the issues that had already been decided in the contempt proceeding. As those issues served as the basis for the breach of contract action, Lee and SHC requested the trial court enter judgment in their favor or, in the alternative, limit Spoden to litigating only those issues not decided in the contempt proceeding. The trial court denied the motion. Similarly, Lee and SHC filed a motion in limine seeking to preclude Spoden from offering evidence related to issues decided in the contempt proceeding on the basis of res judicata. Again, the trial court denied the motion.

At trial, Spoden argued, in part, that Lee and SHC sold the Florida Property in bad faith. In response, Lee and SHC informed the trial court of their intent to introduce evidence that they had legal justification for selling the property in the form of the contempt proceeding ruling. Spoden objected, arguing that admission of the ruling would be unfairly prejudicial and would invade the province of the jury. Lee and SHC responded that the order was necessary to demonstrate that they were not acting in bad faith. During the argument on the matter, the trial court observed that, although the order was prejudicial to Spoden, it was also the truth. The trial court went on to note that "[Lee] didn't sell [the Florida Property] until he had a ruling that he could sell it. He's got to have an ability to defend himself from the allegation." However, when

4

Lee and SHC indicated that they intended to offer the order into evidence, the trial court sustained Spoden's objection and, ruling the evidence was too prejudicial, disallowed both the order and testimony relating to the order.[3]

After both parties rested, Spoden moved to amend her complaint. Specifically, Spoden sought to amend her ad damnum[4] to $247,843.50. Lee and SHC objected, arguing that Spoden's complaint never had an ad damnum, therefore, the amendment improperly prejudiced them. The trial court ruled that no amendment was necessary because Spoden's claim "covers the evidence that's been presented in this case." The trial court went on to say:

> However, in the alternative, if it's determined that an amendment is required, the court feels that since this sale took place so close to trial, that an amendment is warranted to allow [Spoden] to try and achieve complete relief under the facts of this case.

When Lee and SHC again pointed out that there was no ad damnum, the trial court stated that their objection came too late. According to the trial court, Lee and SHC should have raised this issue prior to trial.

> Once we get to trial, I'm not going to go through a whole trial and then if there's a problem with the [ad damnum], take action on the merits.
>
> If you were unhappy with the [ad damnum], you could have come to court and gotten that straightened out and I'm not going to straighten it out now. It's too late.

---

[3] Lee and SHC subsequently proffered that Lee would have testified that he felt that the ruling in the contempt proceeding justified the sale of the Florida Property and that the ruling in the contempt proceeding influenced the timing of the sale of the Florida Property. Lee and SHC further proffered that Lee would have testified that he waited until he had received that order before he took any action to sell the Florida Property.

[4] The record repeatedly uses the term "addendum" instead of ad damnum. Given the context of the discussion, it is readily apparent that the use of the term "addendum" is a scrivener's error.

During her closing argument, Spoden argued that the only place that the parties could draw information as to who could sell the Florida Property was the Term Sheet. She further argued that Lee had no right to sell the Florida Property without her permission and that Lee knew this but sold the property anyway.

The jury returned a verdict for Spoden and awarded her $138,880.50 in non-itemized damages. Lee and SHC filed a post-trial motion to reconsider, arguing that Spoden's breach of contract claim was barred by the doctrines of both res judicata and collateral estoppel. The trial court denied the motion, holding that Lee and SHC had not raised the issue of collateral estoppel at trial and, thus, were barred from raising it in a motion to reconsider.

Lee and SHC also moved to set aside the jury verdict on the grounds that it was excessive. Specifically, Lee and SHC argued that "[b]ecause [Spoden] did not include an ad damnum in her Amended Complaint, the jury verdict exceeds the amount sued for, and . . . it should be reduced to the amount sued for. In this case, that amount is zero." The trial court denied the motion, noting that it had specifically amended the ad damnum "to a figure of approximately $250,000."

Lee and SHC appeal.

## II. ANALYSIS

On appeal, Lee and SHC argue that the trial court erred by failing to give preclusive effect to the ruling in the contempt proceeding. They further take issue with the trial court's decision to exclude evidence related to the ruling in the contempt proceeding and its refusal to set aside the verdict. Finding that the trial court erred, we will reverse.

### A. Res Judicata

6

SHC and Lee argue that the trial court erred by allowing Spoden's breach of contract claim to proceed to trial because the claim had already been litigated in the contempt proceeding. They contend that both actions involve the same opposing parties, both actions arise from the same conduct, Spoden's allegations were actually litigated in the contempt proceeding and the contempt proceeding resulted in a final judgment. Therefore, according to Lee and SHC, res judicata bars Spoden's breach of contract action.

"Res judicata encompasses four preclusive effects, each conceptually distinct, which a final personal judgment may have upon subsequent litigation. These are merger, direct estoppel, bar, and collateral estoppel." Bates v. Devers, 214 Va. 667, 670, 202 S.E.2d 917, 920 (1974). These preclusive effects may, in turn, be divided into two categories: claim preclusion and issue preclusion. Taylor v. Sturgell, 553 U.S. 880, 892 (2008). "Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" Id. (quoting New Hampshire v. Maine, 532 U.S. 742, 748 (2001)). In Virginia, claim preclusion is encompassed by Rule 1:6. The preclusive effects of bar[5] and merger[6] fall under the category of claim preclusion. Id. at 892 n.5.

_____

[5] Bar arises when a valid and final personal judgment is entered for the defendant. Such judgment "bars relitigation of the same cause of action, or any part thereof which could have been litigated, between the same parties and their privies." Bates, 214 Va. at 670-71, 202 S.E.2d at 920-21 (emphasis omitted); see also Rule 1:6.

[6] "Merger occurs when a valid and final personal judgment for money is entered for plaintiff." Bates, 214 Va. at 670 n.3, 202 S.E.2d at 920 n.3. Once judgment has been entered, the "original cause of action is merged into the judgment and is extinguished" and the plaintiff cannot maintain a subsequent action on the original cause of action. Id. We note that the doctrine on merger has been modified by statute in multiple-tortfeasor situations. However, as merger is inapplicable to the present case, we need not consider the effect of such modifications.

7

Issue preclusion, on the other hand, "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." Taylor, 553 U.S. at 892 (quoting New Hampshire, 532 U.S. at 748). The preclusive effects of direct estoppel[7] and collateral estoppel[8] fall under the category of issue preclusion.

At various points during the trial, Lee and SHC made arguments relating to both categories of res judicata. In their motions for summary judgment, to strike Spoden's evidence, and to reconsider, Lee and SHC argued that res judicata barred Spoden from pursuing her breach of contract claim (i.e., it was barred by the doctrine of claim preclusion). In their motions for summary judgment and in limine, Lee and SHC also argued that res judicata barred Spoden from relitigating any issues already decided in the contempt proceeding (i.e., seeking application of issue preclusion). On appeal to this Court, Lee and SHC specifically identify and assign error to each ruling the trial court made relating to both categories of res judicata. Thus, we find that the issues of claim preclusion and issue preclusion were presented to the trial court and are properly before this Court.

### 1. Claim Preclusion

In Virginia, claim preclusion is governed by Rule 1:6.

---

[7] "Direct estoppel arises when defendant has won a judgment not on the merits." Bates, 214 Va. at 670 n.3, 202 S.E.2d at 920 n.3 (emphasis omitted). "Although plaintiff's cause of action may survive the judgment, the parties are precluded in any subsequent action based upon that cause of action from relitigating any issue actually litigated and determined by the judgment." Id.

[8] Collateral estoppel arises when the subsequent cause of action differs from the first, but the parties and their privies are the same. Bates, 214 Va. at 671, 202 S.E.2d at 921. Collateral estoppel precludes the parties from relitigating "any issue of fact actually litigated and essential to a valid and final personal judgment in the first action." Id. (emphasis omitted).

> A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, shall be forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended, or the particular remedies sought.

Rule 1:6(a).

### a. Decided on the Merits by a Final Judgment

In the present case, the contempt proceeding was clearly decided on the merits by a final judgment. Spoden, however, contends that the final order in the contempt proceeding does not have a preclusive effect because the trial court lacked subject matter jurisdiction. According to Spoden, the trial court only had subject matter jurisdiction to decide whether Lee was in contempt; it had no jurisdiction to interpret the Term Sheet. Clearly this argument is incorrect. Absent the ability to interpret the Term Sheet, there would be no means by which the trial court could determine whether it had been violated.

Additionally, in her petition for the rule to show cause, Spoden specifically requested an award of monetary damages. A trial court is authorized to make an award of monetary damages in a civil contempt proceeding to "compensate a plaintiff for losses sustained because a defendant disobeyed a court's order." Bagwell v. International Union, United Mine Workers, 244 Va. 463, 475, 423 S.E.2d 349, 356 (1992), rev'd on other grounds, 512 U.S. 821, 838 (1994). However, to afford the complete relief Spoden sought in the contempt proceeding, the trial court would necessarily have to interpret the term sheet. Thus, it is readily apparent that the jurisdiction to interpret the Term Sheet is inherently included in the trial court's jurisdiction to determine whether Lee was in contempt.

9

Further, both state and federal courts have recognized that findings made in a contempt proceeding have the requisite finality and scope to be accorded the preclusive effect of res judicata in subsequent proceedings between the parties. See, e.g., Williams v. IBEW, Local 520, 298 F.3d 458, 461-62 (5th Cir. 2002) (holding that a prior contempt order precluded a later damage claim and warranted entry of summary judgment); In the Interest of A. S., 734 S.E.2d 225, 227 (Ga. Ct. App. 2012) (holding that res judicata precludes relitigation of the findings of a prior contempt proceeding in a subsequent action between the parties).

### b. Same Parties

The term "party or parties" as used in Rule 1:6(a) "include[s] all named parties and those in privity." Rule 1:6(d). In the present case, it is beyond contention that Lee was a party to both actions. Similarly, it is not contested that SHC was not a party to the contempt proceeding. Thus, the question becomes whether Lee and SHC were in privity.

"The touchstone of privity for purposes of res judicata is that a party's interest is so identical with another that representation by one party is representation of the other's legal right." State Water Control Bd. v. Smithfield Foods, Inc., 261 Va. 209, 214, 542 S.E.2d 766, 769 (2001) (citations omitted). In the present case, it is readily apparent that SHC's interests are identical with Lee's. Notably, Lee is the sole shareholder of SHC. Thus, for the purposes of determining the interests of SHC, we look solely to Lee.

It is further worth noting that Spoden's breach of contract action is fundamentally premised upon her position that privity exists between Lee and SHC. In her amended complaint, Spoden recognizes that SHC was not a signatory and, therefore, is not bound by the Term Sheet. She bases SHC's liability on "the actual authority of Lee to bind himself and SHC."

10

Accordingly, on the plaintiff's own theory in the breach of contract action, Lee and SHC were necessarily in privity for the purposes of the present case.

c. Same conduct, transaction or occurrence

In determining whether the subsequent action involves the same conduct, transaction or occurrence, our focus is on whether that action is based on the same or a different cause of action. See Bates, 214 Va. at 670-71, 202 S.E.2d at 920-21. If the cause of action is the same, the judgment in the first action precludes the second action. Id.

An important distinction must be drawn between "causes of action" and "rights of action." "[A] cause of action is a set of operative facts which, under the substantive law, may give rise to a right of action." Roller v. Basic Constr. Co., 238 Va. 321, 327, 384 S.E.2d 323, 326 (1989). A right of action, on the other hand, "is the remedial right accorded [a] person to enforce a cause of action [and] arises only when [a] person's rights are infringed." Id. As the present case demonstrates, "multiple rights of action may arise under a given cause of action." Kiser v. A.W. Chesterton Co., 285 Va. 12, 21, 736 S.E.2d 910, 916 (2013). However, "a wrongful act generally gives rise to only a single indivisible cause of action." Id.

In the present case, with one exception[9], the underlying causes of action in both the contempt proceeding and the breach of contract case are the same. That is, they both involve the same conduct, transactions or occurrences: the alleged breaches of the Term Sheet. Each alleged breach of the Term Sheet gave rise to at least two separate rights of action: an action to hold Lee in contempt and an action for contract-based damages.

Finally, Spoden makes much about the fact that the breach of contract action was filed before the rule to show cause petition. This Court has long recognized that "[e]very litigant

---

[9] The one exception will be discussed more in depth below.

11

should have [the] opportunity to present whatever grievance he may have" but if given an opportunity to do so and "having failed to avail himself of it, he must accept the consequences." Miller v. Smith, 109 Va. 651, 655, 64 S.E. 956, 957 (1909). Thus, the mere fact that the breach of contract action was filed prior to the petition for a rule to show cause does not change the applicability of res judicata. Indeed, this timing principle is nearly universal among courts. See Restatement (Second) of Judgments § 14 (1982) ("For purposes of res judicata, the effective date of a final judgment is the date of its rendition, without regard to the date of commencement of the action in which it is rendered or the action in which it is to be given effect.").

Accordingly, Spoden's decision[10] to pursue contempt charges against Lee for his alleged violations of the Term Sheet and her failure to appeal from the adverse ruling in the contempt proceeding precludes her from pursuing any further claims against Lee based on those same violations. As noted above, because Lee and SHC were in privity, this preclusive effect extends to SHC. Thus, the trial court erred in failing to dismiss Spoden's claims that had already been decided in the contempt proceeding.

### 2. Issue Preclusion

Although claim preclusion bars the majority of Spoden's claims in her breach of contract action, we note that there is one claim that was not litigated in the contempt proceeding: Spoden's allegation that the actual sale of the Florida Property was done in bad faith. The sale occurred after the trial court's ruling in the contempt proceeding and, therefore, could not have been the subject of the claims advanced by Spoden in the contempt proceeding. Therefore, claim

---

[10] Contrary to Spoden's argument, the trial court did not order her to pursue the rule to show cause. Rather, it is readily apparent that the trial court merely stayed its decision on the demurrer to allow her to seek a rule to show cause, if she so desired.

preclusion is inapplicable to this cause of action. Nonetheless, res judicata, in the form of issue preclusion, still applies.

As the parties are the same and the subsequent cause of action differs from the first, the applicable form of issue preclusion is collateral estoppel. Therefore, although Spoden's claim may go forward, any findings necessarily made by the trial court in the contempt proceeding must be given binding and preclusive effect on any issue for which they may be relevant. See, e.g., Glasco v. Ballard, 249 Va. 61, 64, 452 S.E.2d 854, 855 (1995) (citing Pickeral v. Federal Land Bank, 177 Va. 743, 750, 15 S.E.2d 82, 85 (1941)).

Accordingly, we will reverse the decision of the trial court and remand the matter for further proceedings to consider the preclusive effect of the trial court's findings in the contempt proceeding and to determine whether Spoden's claim relating to the actual sale of the Florida Property is still viable. If the trial court determines the claim is still viable, we recognize that the admissibility of the trial court's ruling in the contempt proceeding will again be at issue. Therefore, we will address the matter here. See Harman v. Honeywell Int'l, Inc., 288 Va. 84, 95-96, 758 S.E.2d 515, 522 (2014) (considering evidentiary issues that would probably arise on remand where the judgment was reversed on other grounds). For similar reasons, we will also address the question of whether the trial court should have set the verdict aside as being excessive.

## B. Excluded Evidence

SHC and Lee argue that the trial court erred in excluding evidence related to the trial court's ruling in the contempt proceeding that granted SHC permission to sell the Florida Property. Lee and SHC acknowledge that evidence was damaging to Spoden's case, but contend that it was not unfairly prejudicial. We agree.

13

In Virginia, "[a]ll relevant evidence is admissible." Va. R. Evid. 2:402(a). The determination of whether to admit evidence "rests within the sound discretion of the circuit court and will only be disturbed on appeal upon a showing of an abuse of discretion." Gamache v. Allen, 268 Va. 222, 228, 601 S.E.2d 598, 601 (2004). Further, "[i]n determining whether [relevant] evidence should be admitted, the circuit court must apply a balancing test to assess the probative value of the evidence and its prejudicial effect." Id. at 227, 601 S.E.2d at 601.

Further, this balancing test requires that "the probative value of the evidence [be] substantially outweighed by . . . the danger of unfair prejudice." Virginia Rule of Evidence 2:403(a)(i) (emphasis added). The requirement under Rule 2:403 that only "unfair" prejudice may be considered reflects the fact that all probative direct evidence generally has a prejudicial effect to the opposing party. Cf. Powell v. Commonwealth, 267 Va. 107, 141, 590 S.E.2d 537, 558 (2004) ("All evidence tending to prove guilt is prejudicial to an accused"). "Any prejudice in the form of the jury's perception of [the claims of a party] is not unfair prejudice such that its admission could properly be barred under Virginia Rule of Evidence 2:403(a)." Egan v. Butler, 2015 Va. LEXIS 86, at *8-*9 (2015). See also Powell, 267 Va. at 141, 590 S.E.2d at 558 ("[D]irect evidence . . . is rarely subject to exclusion on the ground that it would be unduly prejudicial."). Instead, "unfair prejudice" refers to the tendency of some proof to inflame the passions of the trier of fact, or to invite decision based upon a factor unrelated to the elements of the claims and defenses in the pending case.

> The term "unfair prejudice" . . . speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt [or liability] on a ground different from proof specific to the [case elements]. "Unfair prejudice" within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.

<u>Old Chief v. United States</u>, 519 U.S. 172, 180 (1997) (construing the federal analogue to Virginia Rule of Evidence 2:403) (internal quotation marks and citation omitted).

Thus, the mere fact that evidence is highly prejudicial to a party's claim or defense is not a proper consideration in applying the balancing test. Rather, a trial court must determine whether the probative value of the evidence is substantially outweighed by its <u>unfair</u> or <u>unduly</u> prejudicial effects. <u>See</u> <u>Gamache</u>, 268 Va. at 227, 601 S.E.2d at 601 ("Evidence that is factually relevant may be excluded from the jury's consideration if the probative value of that evidence is substantially outweighed by the danger of <u>unfair</u> prejudice.") (emphasis added); Virginia Rule of Evidence 2:403(a).

Here, it is readily apparent that the trial court failed to apply the Rule 2:403 balancing test correctly. The ruling in the contempt proceeding is both relevant and highly probative of whether Lee and SHC acted in bad faith in actually selling the Florida Property. The fact that the trial court had previously decided that SHC owned the Florida Property and had the right to sell it demonstrates that Lee and SHC had a rational basis for believing that their actions were legally justified. While such evidence is, admittedly, prejudicial to Spoden's claim that Lee and SHC acted in bad faith, it is not unfairly or unduly prejudicial.

Nor does such evidence invade the province of the jury, as the trial court found. The ruling only addresses who has the right to sell the Florida Property, not whether the subsequent sale was made in bad faith.[11] Accordingly, it was error for the trial court to exclude evidence of the prior ruling on the matter.

---

[11] We further note that the trial court's interpretation of the Term Sheet in the contempt proceeding concerned a matter of law, not fact. <u>See</u> <u>PBM Nutritionals, LLC v. Lexington Ins. Co.</u>, 283 Va. 624, 633, 724 S.E.2d 707, 712 (2012) ("The interpretation of a contract presents a question of law."). As Spoden did not object to this ruling, it was conclusively established, as a

C. Motion to Set Aside the Verdict

Lee and SHC next argue that the trial court erred in denying their motion to set aside the verdict as excessive. Lee and SHC contend that, because of her failure to include an ad damnum clause in her amended complaint, Spoden was limited to an award of $0. Therefore, according to Lee and SHC, the jury verdict cannot stand and the trial court should have set it aside.

"It is elementary that one cannot recover a greater amount than he sets out or claims in an action brought by him." West v. Anderson, 186 Va. 554, 563, 42 S.E.2d 876, 880 (1947). See also Hook v. Turnbull, 10 Va. (6 Call) 85, 86 (1806) ("[I]n an action sounding merely in damages, a plaintiff cannot recover more damages than he demands, although he may [recover] less"). This concept is grounded in the notion that "[t]he plaintiff ought to know what are the damages he has sustained, and if he [claims] none, he cannot say that he has sustained any." Stephens v. White, 2 Va. (2 Wash.) 203, 212 (1796). Further, Rule 3:2(c)(ii) requires that "[e]very complaint requesting an award of money damages shall contain an ad damnum clause stating the amount of damages sought." Thus, as Lee and SHC correctly argue, in an action for damages, an award cannot be sustained where the complaint does not include an ad damnum clause.

However, after both parties had presented their evidence in the present case, Spoden moved to amend her complaint under Rule 1:8 to specify the amount of damages she was seeking. Lee and SHC objected, raising the same argument that they make before this Court: that Spoden's failure to include the amount of damages was fatal to her claim. The trial court ruled that no amendment was necessary because the amended complaint "covers the evidence

matter of law, that SHC could sell the property. Thus, the ruling did not involve a question of fact and, therefore, could not invade the province of the jury.

16

that's been presented in the case." In the alternative, the trial court granted Spoden leave to amend her complaint to include the amount of damages she was seeking. See Rule 3:2(c)(ii) ("Leave to amend the ad damnum clause shall be available under Rule 1:8.").

Notably, Lee and SHC did not appeal the trial court's decision to grant leave to amend. Therefore, the propriety of that decision is not before this Court; right or wrong, the trial court's ruling on the matter has become the law of the case. See Little v. Cooke, 274 Va. 697, 722, 652 S.E.2d 129, 144 (2007) (holdings uncontested on appeal become "the law of the case"); Board of Supervisors v. Stickley, 263 Va. 1, 6, 556 S.E.2d 748, 751 (2002). Accordingly, we look only to whether the jury's award exceeded the amount of damages sought after leave to amend was granted. As the $138,880.50 awarded by the jury was considerably less than $247,843.50, the trial court did not err in refusing to grant the motion to set aside the verdict.

### III. CONCLUSION

Finding that the trial court erred in denying Lee and SHC partial summary judgment on the matters that had been decided in the contempt proceeding, we will reverse the judgment of the trial court, enter partial final judgment for Lee and SHC, and remand for further proceedings not inconsistent with this opinion. Furthermore, we find that the trial court erred in excluding evidence of the trial court's ruling in the contempt proceeding as it relates to the ownership of the Florida Property. We will, however, affirm the trial court's decision to deny the motion to vacate the judgment as excessive.

Affirmed in part,
reversed in part,
final judgment in part
and remanded.

17