COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Huff, Athey and Fulton
Argued at Lexington, Virginia

MATTHEW ISAAC CRITCHLEY

MEMORANDUM OPINION* BY
v.        Record No. 2222-23-3              JUDGE GLEN A. HUFF
OCTOBER 1, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
John T. Cook, Judge

Matthew L. Pack (M. Pack Law, PLLC, on brief), for appellant.

Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, the Circuit Court of Campbell County ("the trial court") convicted

Matthew Isaac Critchley ("appellant") of second-degree murder and using a firearm in the

commission of a felony.  The trial court sentenced him to 43 years of imprisonment with 18 years

suspended.  On appeal, appellant argues that the trial court abused its discretion by excluding

evidence of a writing he claims was written by the victim.  He argues that the writing demonstrated

both the victim's animus toward people with whom appellant associated and the victim's propensity

for violence.  Finding no error, this Court affirms the trial court's judgment.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

Physical Evidence

On August 29, 2021, Lawrence Keith Taylor was shot and killed in the living room of his home, which he had shared with Tracy Critchley ("Tracy"), appellant's mother, for about two years. Taylor was shot twice in the head and three times in the torso.

When the police arrived at the scene of the shooting around 10:30 p.m., appellant and Tracy were together outside the house. A silver semi-automatic .45 caliber Sig Sauer firearm with a magazine was on a wooden stand near them. Appellant said that Taylor was inside the house and he thought Taylor was dead. Upon entering the house, police found Taylor on the living room floor in a pool of blood. A shotgun was in his left hand with "an open palm grip." A responding police officer described this grip as "odd," adding that in his "years of experience" he had never seen "a gun rest in a hand like that." No trace evidence, blood, or fingerprints were recovered from the shotgun, but there was dust in the cracks and crevasses around the trigger guard of the weapon, along with cobwebs in the trigger housing itself.

All five cartridge casings found in the house were fired from the .45 caliber gun that was near appellant when the police arrived. Four bullets and additional bullet fragments recovered from Taylor's body during his autopsy, as well as a projectile found on the kitchen table in the house, were fired from the same .45 caliber gun. When first recovering the gun, police removed a bullet from the chamber of the weapon and observed that the magazine contained three bullets. Additionally, officers observed blood on a wooden chair near the back hallway with an indentation

---

[1] On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

"consistent with [a] ricochet from a bullet." There was also blood splatter on the wall behind the chair and a trail of blood leading from the chair to Taylor's body.

An autopsy of Taylor's body indicated he had been shot five times. Twice in the head, including one bullet that entered just behind the right ear, penetrating the skull and passing through the brain before fragmenting in the backside of his head. The remaining three gunshot wounds were to his torso; two entered through the right side, the third entered through the back and passed through his heart, esophagus, and both lungs. The cause of death was determined to be multiple gunshot wounds to the head and torso.

### Tracy's Testimony

At trial, Tracy testified that she and Taylor argued on the day of the shooting. Taylor drank alcohol that day, became angry and erratic, and even tried to start a fire in the middle of the living room, which Tracy extinguished. Upset by the argument and Taylor's behavior, Tracy decided to pack her belongings and leave Taylor's house permanently. She called her daughter, Brittany Critchley ("Brittany"), to inform her about the situation, and Brittany then contacted appellant. According to Tracy, Taylor obtained a gun and placed it beside his chair in the living room before ordering her not to call the police or else she "would be dead before they got there."

Appellant arrived at Taylor's home with one of his friends, James Newton, who was African-American. Tracy brought them into the house and told Taylor that they were there to help her move her belongings. Taylor cursed at Tracy in front of appellant, and appellant commented that Taylor should not talk to Tracy in that way. Appellant and Newton made two trips carrying Tracy's clothes from the bedroom to the car outside. At one point, Taylor took Tracy's clothes out of the car, threw them on the ground, and poured a sticky substance on them.

Tracy claimed that she had returned to the bedroom before the shooting and, as a result, did not see it happen. Before returning to the bedroom, she saw Taylor sitting in a chair unarmed. She

- 3 -

stated that she heard Taylor, who had returned inside, cursing at appellant and Newton and ordering them to leave. She then heard appellant yell "ma," followed by gunshots. Next, appellant came to the bedroom and guided her out of the house. According to her, she saw Taylor on the floor at the end of the hallway with a gun in his hand before she left the house with appellant.

While standing outside, appellant talked to his father on the phone. He and Tracy then entered the house together. Tracy stated that she saw a gun near Taylor when she shook his leg to see if he was alive. She insisted that she and appellant "were always together" in the house after the shooting and that appellant did not go inside the house alone.

When questioned by police about the shooting, Tracy said that she was in the living room when she saw appellant at the front door. She told the police that she did not see Taylor with a gun at that point. She also admitted that she did not feel threatened by Taylor that night. To explain the inconsistencies between her statement to the police and her subsequent trial testimony, Tracy claimed that she was in shock when the police interviewed her after the shooting.

Excluded Evidence

At trial, appellant sought to admit into evidence a photograph of a paper plate that was displayed at the entrance to Taylor's house at the time of the shooting. In handwriting that Tracy could purportedly identify as Taylor's, the paper plate contained the message: "I hate nigger loves[.] They are here to destroy white folks get it! Hope they die!"

The Commonwealth objected to the admission of the photograph, arguing that the evidence was irrelevant because there was "no race element to this case at all." Indeed, both appellant and Taylor were Caucasian. Nevertheless, appellant contended the photograph was relevant to prove that Tracy was in danger at the time of the shooting. He asserted that both he and Brittany had dated people of another race in the past and that Newton, who had accompanied appellant into the house on the day of the shooting, was African-American. Therefore, appellant claimed, the

message on the plate was relevant to show Taylor's animosity and violence on the day of the shooting. The Commonwealth responded that the photograph had "no relevance whatsoever" and was "only being used to essentially assassinate the character of the decedent[.]"

Citing Virginia Rule of Evidence 2:403, the trial court sustained the Commonwealth's objection and excluded the photograph. In doing so, the trial court observed that the prejudice of the photograph "substantially outweigh[ed] any . . . tenuous relevance" that appellant had proffered. At the conclusion of the evidence, the jury convicted appellant of second-degree murder and using a firearm in the commission of a felony. This appeal followed.

## ANALYSIS

Appellant's sole argument on appeal is that the trial court abused its discretion in excluding the photograph of the paper plate with the derogatory message written on it. "On appeal, this Court 'reviews a trial court's ruling admitting or excluding evidence for abuse of discretion.'" *Church v. Commonwealth*, 71 Va. App. 107, 122 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 866 (2016)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005). "The measure of the burden of proof with respect to factual questions underlying the admissibility of evidence is proof by a preponderance of the evidence." *Church*, 71 Va. App. at 122 (quoting *Atkins v. Commonwealth*, 68 Va. App. 1, 9 (2017)).

"Evidence is relevant if it tends to prove or disprove, or is pertinent to, matters in issue." *Kenner v. Commonwealth*, 299 Va. 414, 425 (2021) (quoting *Clay v. Commonwealth*, 262 Va. 253, 257 (2001)); *see also* Va. R. Evid. 2:401 (defining relevant evidence). "All relevant evidence is admissible, except as otherwise provided" by law or evidentiary principles. Va. R. Evid. 2:402(a). A trial court may exclude relevant evidence, however, if "the probative value of

the evidence is substantially outweighed by . . . the danger of unfair prejudice." Va. R. Evid. 2:403(a)(i). "The requirement under Rule 2:403 that only 'unfair' prejudice may be considered reflects the fact that all probative direct evidence generally has a prejudicial effect to the opposing party." *Lee v. Spoden*, 290 Va. 235, 251 (2015).

The message on the paper plate, even if written by Taylor, had no tendency to prove any matter at issue in the case. At most, the evidence tended to demonstrate that Taylor ascribed to racist beliefs. But there was no indication that those beliefs made Taylor prone to violence or that his behavior in the events leading up the shooting was motivated by those beliefs. Accordingly, Taylor's beliefs on race did not support appellant's defense of others argument raised in relation to the charged crimes. Thus, the record supports a conclusion that the excluded photograph was irrelevant and unduly prejudicial, and the trial court did not abuse its discretion in excluding it.[2]

## CONCLUSION

For the foregoing reasons, this Court affirms the trial court's judgment.

*Affirmed.*

---

[2] Assuming without deciding that the photograph's exclusion was error, it was nevertheless harmless. This Court "may uphold a decision on the ground that any evidentiary error involved is harmless if it can conclude 'that the error did not influence the jury[] or had but slight effect.'" *Commonwealth v. Kilpatrick*, 301 Va. 214, 216 (2022) (alteration in original) (quoting *Clay v. Commonwealth*, 262 Va. 253, 260 (2001)). "To reach this conclusion, the evidence of guilt must be so overwhelming that it renders the error insignificant by comparison such that the error could not have affected the verdict." *Id.* at 217. Here, the evidence indicates that Taylor was sitting in the chair when he was first shot and he attempted to move from that location while appellant continued to shoot. The pool of blood around Taylor's body combined with the lack of blood on the shotgun, the open palm grip, and the cobwebs and dust found around the trigger support the conclusion that it was placed in Taylor's hand after he was killed. Accordingly, there is more than sufficient evidence on this record to support the jury's guilty verdict and to conclude that the photograph of the paper plate—and its indication of racial animus—would have no, or only slight, effect on that verdict.