COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Causey and Chaney
Argued at Williamsburg, Virginia

BRIAN JAMES TALBOT

                                           MEMORANDUM OPINION* BY
v.      Record No. 2223-23-1                JUDGE VERNIDA R. CHANEY
                                           SEPTEMBER 23, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
James C. Lewis, Judge

Robert C. Neeley, Jr. (Neeley Law Group PLC, on brief), for
appellant.

Ryan D. Beehler, Assistant Attorney General (Jason S. Miyares,
Attorney General; Suzanne Seidel Richmond, Assistant Attorney
General, on brief), for appellee.

A jury found Brian James Talbot guilty of rape of a child less than 13 years of age by a

person 18 years of age or older, object sexual penetration of a child less than 13 years of age by a

person 18 years of age or older, and aggravated sexual battery of a child less than 13 years of

age. By final order entered on March 21, 2023, the Circuit Court of the City of Virginia Beach

sentenced him to 2 terms of life imprisonment plus 20 years. Talbot now appeals, arguing that

the trial court abused its discretion by admitting evidence of his previous conviction for rape of a

child less than 13 years old. He also asserts that the trial court erroneously declined to strike

Juror 1190 for cause. For the reasons stated below, this Court affirms the trial court's judgment.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

I. The 2007 Sexual Abuse

In July 2007, nine-year-old S.R.L.[2] traveled to Virginia Beach for her

great-grandmother's birthday with her extended family. During the trip, S.R.L. asked to go in

the water on the beach while everyone was having lunch, but her parents would not let her go

into the water without supervision. Talbot, S.R.L.'s father's first cousin, who was 40 years old at

the time, offered to accompany S.R.L. in the water. While the two were in the water, they

reached a point where S.R.L. could not touch the bottom, so she had to "reach[] for [Talbot]" to

stay afloat. Talbot "picked [her] up under [her] arms just to hold [her] above the water."

Talbot then readjusted how he was holding S.R.L. and "had one of his arms kind of like

underneath [her] bottom." He "sat" S.R.L. on the inside of his forearm, and then, "reached to the

front" of her swimsuit and "put his finger inside [her vagina]." When Talbot and S.R.L. returned

to the beach, Talbot told S.R.L. that she "was a very special girl," that what he did was "normal,"

and that she "was his girlfriend."

Later that weekend, S.R.L.'s family was at Talbot's parent's home, and the kids went

outside to play in "a little kiddie pool in the backyard." After some time, Talbot told everyone

he was leaving. Shortly after, S.R.L. got out of the pool and told her mother she "wanted to

change out of [her] swimsuit," so her mother told her to go upstairs, take a bath, and change into

her pajamas.

---

[1] On appeal, "[w]e recite the facts 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Pereira v. Commonwealth*, 83 Va. App. 431, 439 n.3 (2025) (quoting *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)). Doing so requires this Court to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Id.* (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

[2] Because the victim was a minor, we use her initials to protect her privacy.

S.R.L. went upstairs and started the bath, but "had left [her] bag downstairs." She went back downstairs to get her bag, and when she returned upstairs, Talbot "was sitting on the foot of the bed and the bath water was turned off." Talbot told S.R.L. "to come sit next to him," and when she did, Talbot laid her on her back and pulled her swimsuit down "to just below [her] knees." Talbot told S.R.L. that she was a "very special girl" and pulled his pants "down to below his knees but not completely off." Talbot used one hand to hold S.R.L.'s hands above her head and the other to cover her mouth, and "told [her] not to make any noise."

Talbot then "put his penis in [her] vagina." S.R.L. had her face turned away from Talbot's head, but she could "hear him breathing" and feel Talbot "thrusting . . . his hips." When he was finished, Talbot told S.R.L. "not to tell anyone." He then "helped [her] take [her] swimsuit off," "put [her] in [her] pajamas and told [her] to go downstairs."

At the end of the weekend, when S.R.L.'s family was leaving, Talbot gave S.R.L. "a necklace that was shaped like a crown." S.R.L.'s parents felt that the necklace "was an inappropriate gift," so they made Talbot return it. Talbot was "upset," but took the necklace back and instead gifted S.R.L. a "Nancy Drew Book" and a "picture Bible." The Bible was kept in the family's house; the inside was inscribed to "[S.R.L.] and family Love, Brian" and is dated July 15, 2007. The Nancy Drew book also had a message and a photo drawn by Talbot of "him and [S.R.L.] holding hands in the front cover." At some point after the family returned home, they "ripped" the page with the message and drawing out and "gave the book to Goodwill."

In 2015 or 2016, S.R.L. saw Talbot at a family dinner at her grandmother's residence. During dinner, Talbot told S.R.L. that she was "growing into a beautiful young lady." He also asked if she was 18 years old yet.

S.R.L. testified that, in late 2015, she told her then-boyfriend what Talbot had done to her in 2007. In January 2016, S.R.L. told her mother, and in December 2017, she told Talbot's sisters about the rape and sexual assault. S.R.L. first spoke to a police detective in May 2018.

## II. Evidence of Talbot's Prior Conviction

Before his 2022 trial, the Commonwealth moved to admit Talbot's 2020 Virginia Beach conviction for rape of a child less than 13 years old as substantive evidence under Code § 18.2-67.7:1 and Virginia Rule of Evidence 2:413. At the motions hearing, the Commonwealth noted that under these provisions, Talbot's previous conviction was admissible, subject to the limits of Virginia Rule of Evidence 2:403.

The Commonwealth proffered that, according to the stipulation of facts introduced at the plea colloquy in the 2020 case, the victim in that case, H.H., is the cousin of S.R.L. Per the stipulation, in May or June 2010, Talbot entered H.H.'s room at her grandparents' residence, undressed, and sat on her bed. Talbot "removed her underwear," "told her that he loved her," and "penetrated [her] vagina with his penis until he ejaculated." After, Talbot told H.H. "not to tell because her cousins would be jealous." Then he gave her "some new art materials" and "told [her] that he really loved [her] the best." The Commonwealth represented that these facts were "very similar" to the evidence it would adduce in this case.

Talbot asserted that admitting his previous conviction as "propensity evidence" would be "highly prejudicial." The trial court asked whether that argument was "a little contradictory," given that "the whole reason for the statute is to show propensity." After hearing the parties' arguments, the trial court ruled that Talbot's previous conviction was admissible. The trial court found that the prior conviction was "highly probative of his propensity to commit . . . the charges in this case, and the probative value outweigh[ed] the risk of unfair prejudice."

- 4 -

At trial, Talbot testified in his own defense. He stated that he came from a "very strong Christian family" and that he "love[d] everybody." Talbot explained that "[s]ometimes [he was] a little bit too friendly" and maybe had "made mistakes in that type of area." But he unequivocally denied touching S.R.L.'s vagina or otherwise acting inappropriately toward her. He also denied ever being alone with her, either in the water at the beach or at his parents' residence.

On cross-examination, Talbot averred that his previous conviction resulted from a plea agreement that he was pressured to sign. He testified that his admission of guilt in that case was "not true" and that he had pleaded guilty to "avoid a mandatory life sentence."

### III. Jury Selection

During voir dire, defense counsel told the prospective jurors that "some of the evidence" would show that Talbot "ha[d] been convicted of a crime of a similar nature." Counsel asked: "Would that affect your ability to judge the facts of this case?" and Juror 1190 raised her hand.

During individual voir dire, defense counsel further questioned Juror 1190 about her response concerning Talbot's "past conviction." Juror 1190 said that she was a fifth-grade teacher and that "anytime you hear something with kids, it's upsetting." She added that "if he's been convicted previously, . . . it's kind of hard to not hold that against [him]."

Defense counsel posited a scenario where the trial court instructed the jury that it could "consider a past conviction . . . for the fact of the past conviction alone" but that it could not "use that to determine guilt" in this case. Counsel then asked: "[D]o you think you would have trouble making that distinction?" Juror 1190 responded: "I think it would impact my decision."

The prosecution then stated that the Commonwealth "would want [the conviction] to affect your decision. There's no hiding that." The prosecution explained, however, that "[t]he law on this matter would be that the prior conviction" would be offered only to show Talbot's propensity or

predisposition "to be attracted [to] or have an interest in minors," and would have "no bearing on, in and of itself, whether or not he is guilty or innocent." Juror 1190 responded that she understood the distinction.

The prosecution then asked: "As the defendant sits there right now, do you believe he is guilty?" Juror 1190 answered, "No." The prosecution asked if she could "listen to the law that the judge gives [her] and apply that law fairly and impartially [to] all of the facts" presented by both sides. Juror 1190 responded, "I believe so."

Talbot moved to strike Juror 1190 for cause, asserting that "it would be especially hard for her" to "sit on this type of jury with these types of accusations." The Commonwealth countered that "every [prospective] juror" would have "difficulty sitting on this type of case." The trial court denied Talbot's motion to strike Juror 1190 for cause.

The trial court instructed the jury that "evidence of [Talbot's] previous conviction [was] not determinative of his guilt or innocence in this case, but may be considered as a factor for any matter [the jury] deemed relevant." During its closing argument, the Commonwealth argued that the jury could consider the previous conviction as evidence of Talbot's "propensity to be attracted to little kids" but that "it's not indicative of guilt or innocence." The jury convicted Talbot on all counts. Talbot timely appeals.

ANALYSIS

On appeal, Talbot argues that "[t]he trial court abused its discretion when it allowed evidence of [Talbot's] prior conviction to be admitted into evidence" and "when it denied [his] defense counsel's motion to strike Juror 1190 for cause." Finding no error in the trial court's judgment, this Court affirms.

I. The trial court did not abuse its discretion in admitting Talbot's prior rape conviction.

"A [trial] court's decisions regarding the admissibility of evidence are reviewed for abuse of discretion." *Howard v. Commonwealth*, 74 Va. App. 739, 753 (2022). We will find an abuse of discretion only when "reasonable jurists could not differ." *Hicks v. Commonwealth*, 71 Va. App. 255, 275 (2019). "The proponent of the evidence bears the burden of establishing . . . the facts necessary to support its admissibility." *Church v. Commonwealth*, 71 Va. App. 107, 122 (2019) (alteration in original) (quoting *Perry v. Commonwealth*, 61 Va. App. 502, 509 (2013)). The proponent must meet this burden "by a preponderance of the evidence." *Id.* (quoting *Atkins v. Commonwealth*, 68 Va. App. 1, 9 (2017)). Once the proponent satisfies the threshold for proving admissibility, "any gaps in the evidence" go to the "trier of fact's assessment of its weight rather than its admissibility." *Id.* at 122-23.

"Generally, evidence of a defendant's other criminal acts is 'inadmissible to prove guilt of the crime for which the accused is on trial, even if the other crimes are of the same nature as the crime charged in the indictment.'" *Blankenship v. Commonwealth*, 69 Va. App. 692, 698 (2019) (quoting *Gonzales v. Commonwealth*, 45 Va. App. 375, 380 (2005)); *see* Va. R. Evid. 2:404(a) ("Evidence of a person's character or character trait is not admissible for the purpose of proving action in conformity therewith on a particular occasion."). However, Code § 18.2-67.7:1 provides an exception to the general rule against evidence that shows the defendant has a propensity to commit a crime and that the trial court could consider the similarity of the offenses in conducting the balancing test required by Rule 2:403(a). *Blankenship*, 69 Va. App. at 699-701. "In a criminal case in which the defendant is accused of a felony sexual offense involving a child victim, evidence of the defendant's conviction of another sexual offense or offenses is admissible and may be considered for its bearing on any matter to which it is relevant." Code § 18.2-67.7:1(A); Va. R. Evid. 2:413 (implementing Code § 18.2-67.7:1). Code

- 7 -

§ 18.2-67.7:1 and Rule 2:413 "permit the admission of evidence in the form of a defendant's prior conviction in prosecutions for felony sexual offenses against a child 'for the purpose of establishing propensity to commit other sexual offenses.'" *Blankenship*, 69 Va. App. at 701.

Evidence offered under Code § 18.2-67.7:1(A) remains "subject to exclusion in accordance with the Virginia Rules of Evidence, including but not limited to Rule 2:403." Code § 18.2-67.7:1(E). Under Rule 2:403, a trial court may exclude otherwise relevant evidence if its "probative value" is "substantially outweighed by . . . the danger of unfair prejudice." Va. R. Evid. 2:403(a). "[A]ll probative direct evidence generally has a prejudicial effect to the opposing party." *Walker v. Commonwealth*, 302 Va. 304, 320 (2023) (quoting *Lee v. Spoden*, 290 Va. 235, 251 (2015)). In this context, *unfair* prejudice "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* at 320-21 (quoting *Lee*, 290 Va. at 251-52). Another indicator of unfair prejudice is "the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt [or liability] on a ground different from proof specific to the [case elements]." *Id.* at 320 (alterations in original) (quoting *Lee*, 290 Va. at 251). "[T]he responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court." *Id.* (quoting *Ortiz v. Commonwealth*, 276 Va. 705, 715 (2008)).

Talbot argues that the trial court abused its discretion when it allowed evidence of his prior conviction to be admitted in the Commonwealth's case-in-chief. While Talbot recognizes the importance of *Blankenship* and Rule 2:403, he argues that the trial court failed to conduct the necessary balancing test when reviewing the prejudicial effect of his prior conviction.

In *Blankenship*, this Court emphasized the importance of similarity between the prior conviction and the current charge. 69 Va. App. at 702. "[B]oth cases involved appellant exposing himself to the minor child of an acquaintance, and in both cases, he used a vehicle to

facilitate the offense." *Id.* Additionally, in both cases, "the female victim was significantly younger than appellant and was dependent on appellant for transportation, thereby limiting the opportunity to escape." *Id.* In *Blankenship*, we held that the trial court did not abuse its discretion in finding that the "prior conviction was highly probative of appellant's propensity to commit the crime charged in this case and that this probative value outweighed the risk of any unfair prejudice." *Id.* at 702-03.

Similarly here, the trial court concluded that the probative value of the prior conviction was not substantially outweighed by the potential for unfair prejudice, and this Court agrees. Talbot's 2020 conviction for rape of a child younger than 13 years of age carried substantial probative value as propensity evidence. The conduct in the 2020 conviction occurred in May or June 2010, within three years of the charged conduct in this case. The victim, H.H., was S.R.L.'s cousin. In both cases, the evidence showed that Talbot sexually assaulted the minor at a family member's house, told them he loved them, and gave them gifts. According to the evidentiary stipulation in the 2020 case, Talbot raped H.H., told her he loved her, told H.H. not to tell anyone in the family because they would be jealous, and gave her gifts afterward, just like he did with S.R.L.

Talbot contends that the admission of a child rape conviction against a defendant "on trial for the alleged commission of a sex act against [a] child is guaranteed to inflame the passions of the trier of fact, or to invite decision based upon a factor unrelated to the elements of the claims and defenses," as "the rape of a small child by an adult [would be] a particularly egregious act in the mind of most adults." In promulgating Code § 18.2-67.7:1, however, the General Assembly explicitly provided an exception to admit evidence of prior sexual acts against a child. Code § 18.2-67.7:1(A) ("In a criminal case in which the defendant is accused of a felony sexual offense involving a child victim, evidence of the defendant's conviction of another sexual

- 9 -

offense or offenses is admissible and may be considered for its bearing on any matter to which it is relevant."); *see Blankenship*, 69 Va. App. at 700-01 (noting that the Code and rule "changed the general prohibition against character evidence to prove propensity by creating a narrow exception in child sexual abuse cases").

In accordance with Code § 18.2-67.7:1, Talbot's prior conviction is relevant to the case at hand and "may be considered for its bearing on [the] matter." The Commonwealth argued that the jury should consider the previous conviction as evidence of Talbot's propensity to engage in sexual conduct with children. Talbot exercised his right to testify and told the jury that his admission of guilt in the earlier case was false. Therefore, the trial court did not abuse its discretion by declining to exclude this otherwise admissible evidence under Rule 2:403.

## II. The trial court did not commit manifest error in denying Talbot's motion to strike Juror 1190 for cause.[3]

"[T]he right of an accused to trial by an 'impartial jury' is a constitutional right, reinforced by legislative mandate and by the Rules of this [C]ourt." *Castillo v. Commonwealth*, 70 Va. App. 394, 422 (2019) (quoting *Justus v. Commonwealth*, 220 Va. 971, 975-76 (1980)). "It is the duty of the trial court, through the legal machinery provided for that purpose, to procure an impartial jury to try every case." *Lovos-Rivas v. Commonwealth*, 58 Va. App. 55, 60 (2011) (quoting *Salina v. Commonwealth*, 217 Va. 92, 93 (1976)). "Whether a [prospective juror] can

---

[3] Appellee argues portions of Talbot's argument on appeal are waived, because he only argued at trial that Juror 1190 would be "affected negatively as to the facts of this case" due to her profession as a teacher, making it "especially hard for her to . . . sit on this type of jury with these types of accusations." Rule 5A:18. Appellee argues that any arguments which "go beyond these two scant arguments" are "barred on appeal," including Talbot's argument that "Juror 1190 was not sufficiently rehabilitated or that her answers were equivocal."

While "[m]aking one specific argument on an issue does not preserve a separate legal point on the same issue for review," this Court does not forbid litigants from using new language to describe the same legal problem. *Edward v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc). Because Talbot presents the same argument on appeal that he did at the trial court—that Juror 1190 should have been struck for cause—we consider this argument on the merits.

lay aside a preconceived opinion and render a verdict solely on the evidence is a mixed question of law and fact. Resolution of the question rests within the sound discretion of the trial court." *Calhoun v. Commonwealth*, 226 Va. 256, 258 (1983).

This Court will not disturb the trial court's factual finding regarding a juror's impartiality "unless it is plainly wrong or without evidence to support it." *Goodwin v. Commonwealth*, 71 Va. App. 125, 136 (2019) (quoting *Sheppard v. Commonwealth*, 250 Va. 379, 387 (1995)). We "must give deference to the trial court's decision whether to exclude or retain a prospective juror because the trial court 'sees and hears the juror.'" *Id.* (quoting *Weeks v. Commonwealth*, 248 Va. 460, 475 (1994)). In assessing a prospective juror's impartiality, we review the voir dire of the juror "as a whole, not just isolated statements by that juror." *Id.* "[A] trial court's refusal to strike a juror for cause will not be disturbed on appeal unless that decision constitutes 'manifest error amounting to an abuse of discretion.'" *Id.* (quoting *Lovos-Rivas*, 58 Va. App. at 61).

"To qualify as a juror, a prospective juror must 'stand indifferent in the cause.'" *Castillo*, 70 Va. App. at 422 (quoting Code § 8.01-358). "If a juror 'does not stand indifferent to the cause, he is not competent. If he has any interest in the cause, or is related to either party, or has expressed or formed any opinion, or is sensible of any bias or prejudice, he is excluded by the law.'" *Id.* (quoting *Taylor v. Commonwealth*, 67 Va. App. 448, 454 (2017)). This does not mean that prospective jurors can have no "preconceived notions, opinions, or misconceptions about the criminal justice system, criminal trials and procedure, or about the particular case." *Cressell v. Commonwealth*, 32 Va. App. 744, 761 (2000). Instead, the test of impartiality is "whether an opinion expressed by a juror which is contrary to the presumption of innocence in a criminal case is immutable since the opinion which disqualifies her or him is one which is fixed in that juror's mind." *Sizemore v. Commonwealth*, 11 Va. App. 208, 212 (1990); *see also Bryant v. Commonwealth*, No. 1784-22-2, slip op. at 5-6, 2024 Va. App. LEXIS 247, at *8 (May 7,

2024) (finding that a juror could still be impartial after he stated that he could, despite previous statements that charges involving sexual conduct with a child made him feel "uncomfortable" and "bothered" him); *Harris v. Commonwealth*, No. 0746-22-1, slip op. at 6, 2023 Va. App. LEXIS 798, at *8 (Nov. 28, 2023) (finding that a juror could be impartial despite stating that charges involving sexual conduct with a child were "upsetting" to her because she had a grandchild around that age).

Here, Juror 1190 explained that she was a fifth-grade teacher and that it was "upsetting" to hear about crimes committed against children. In response to defense counsel's questioning, Juror 1190 stated that if she learned during the case that Talbot had previously been convicted of a sexual offense against a child, it would be "kind of hard to not hold that against" him and would "impact [her] decision." In response to the Commonwealth's questions, however, Juror 1190 averred that she did not believe that Talbot was guilty of the charged offenses as he "s[at] there right now." She also stated that she "believe[d]" that she could apply the law "fairly and impartially" to the evidence that both sides presented. Talbot appeals the trial court denial of his motion to strike Juror 1190 for cause, arguing that Juror 1190's statements indicate that she would be unable to remain fair and impartial during his trial.

Importantly, Juror 1190 stated that she believed that she could impartially apply the law to the evidence here. Based on her answers, a trial court could conclude that Juror 1190 could "lay aside [her] preconceived opinion and render a verdict solely on the evidence." *Calhoun*, 226 Va. 258. Talbot argues that any reasonable doubt regarding a juror's ability to be impartial must be resolved in favor of exclusion from the panel. But it is the role of the trial court—which heard and observed the entire voir dire—to make that factual determination. *See Goodwin*, 71 Va. App. at 136 ("[T]he trial court is in a superior position to determine whether a juror's responses during *voir dire* indicate that the juror would be prevented or impaired in performing the duties of a juror as required

by the court's instructions and the juror's oath." (alteration in original) (quoting *Thomas v. Commonwealth*, 279 Va. 131, 164 (2010))). The trial court determined that factual issue in the Commonwealth's favor, and it did not commit manifest error in so doing.

Juror 1190 acknowledged that if she learned that Talbot had been convicted of a sexual offense against a child, it would affect her decision about his guilt or innocence in this case. Nevertheless, Juror 1190's voir dire statements, taken in their entirety, indicate that she believed she could fairly and impartially apply the law to the facts at issue and render a verdict solely on the evidence presented. Therefore, this Court cannot say that the trial court erred in denying Talbot's motion to strike Juror 1190 for cause.

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*

- 13 -